**FUKUMOTO v. ACHESON, as Secretary of State.**

Clv. No. 1031.

United States District Court
D. Hawaii.

June 10, 1952.

Fong, Miho & Choy, Honolulu, Hawaii, A. L. Wirin, Los Angeles, Cal., for plaintiff.

Howard K. Hoddick, Acting U. S. Atty. District of Hawaii, Honolulu, Hawaii, Winston C. Ingman, Asst. U. S. Atty. District of Hawaii, Honolulu, Hawaii, for defendant.

McLAUGHLIN, District Judge.

This is another suit under Section 903 of Title 8, United States Code Annotated, for a judicial declaration of United States citizenship.

It was submitted on Oct. 4, 1951. While under advisement the Court called for another copy of a document issued to the plaintiff by the Japanese government. Despite periodic reminders by the State Department to the former Military Government in Japan, the new copy of plaintiff's Japanese expatriation certificate has not been forthcoming, and further delay is not in order, especially since the peace treaty with Japan has been signed and new and involved procedures would have to be resorted to to revitalize the request. Too, as will be noted hereafter, the honoring of this request is not vital to a resolution of the tendered issue.

This proceeding has several features like those in recent Section 903 cases. That is to say, the plaintiff here, too, was a born dual citizen—the United States and Japan; he went to Japan in 1939 to study further the Japanese language and culture so as better to assist his parents in Hawaii in their oriental dry-goods business; and while in Japan, certain things occurred, which will be specified, on the basis of which the respondent denied plaintiff a passport certifying as the reason that plaintiff had lost his United States citizenship by being naturalized in Japan.

On the dissimilar side, note may be made of the fact that this case does not

involve service by the plaintiff in the Japanese armed forces nor voting in a Japanese election. However, during the war and after 1943—a date which will later be significant, plaintiff was able to and did procure a position as an interpreter in a Japanese Prisoner of War camp.

What, then, are the pivotal facts? They are as follows:

1. In Japan in 1939 plaintiff had his Japanese nationality affirmatively recognized by the Japanese government by having his name registered upon his mother's family record or Koseki, an official governmental record required to be kept on all subjects. See Tomoya Kawakita v. United States, 72 S.Ct. 950.

2. Later, in Japan, for reasons which satisfied him, plaintiff invoked the Japanese law of voluntary expatriation. Being a dual citizen domiciled in the United States of America and temporarily resident in Japan he met the requirements of the particular Japanese law, and consequently on Sept. 25, 1941, he was allowed to abandon his Japanese nationality. This fact is attested to by a certificate issued on the above date by the Japanese Ministry of Home Affairs. An examination of the translation of this exhibit (part of defendant's Exhibit No. 1) discloses an obvious error in that plaintiff's domicile and residence as of that date are transposed. It was to direct attention to this defect that the Court called for a new copy of the original. The plaintiff's own allegations, plus the presumption of regularity attaching to the acts of public officers of foreign governments, Boissonnas v. Acheson, D.C.S.D.N.Y.1951, 101 F.Supp. 138 at 153, and the reliance by both plaintiff and the Japanese government upon the certificate of expatriation, satisfy me that this confusion of domicile and residence was inadvertent and was in nowise fatal to plaintiff's expatriation from Japan.

3. Supporting the above fact of expatriation from Japan is the following and crucial fact, namely, on June 10, 1943, plaintiff applied for and on Sept. 28, 1943, was granted by the Japanese Ministry of Home Affairs, the right of "recovery of Japanese nationality." It is upon this fact that the respondent predicates plaintiff's loss of United States nationality.

The reasons why plaintiff sought and obtained the recovery of his Japanese nationality are multiple. First, he lists that he was in need of a job and in 1943 an uninterned American was unemployable in Japan. Secondly, as an American of Japanese racial extraction who had expatriated himself from Japan, he found the suspicion of Japanese civil and military police to be vexatious. Thirdly, without Japanese nationality he was a social outcast. Lastly, plaintiff lists that he had become married to a Japanese girl, and the only way to legalize the marriage was to record the girl's name on plaintiff's Koseki or family register, which he did not have and could not have unless he was a Japanese national. As colorful, but purely as makeweight, plaintiff also lists that as a Japanese national food and clothing ration cards were simpler to get and surer to hold.

Upon these facts, I agree with the respondent that as a matter of law plaintiff's re-acquisition in Japan in 1943 of his Japanese nationality was voluntary naturalization in a foreign state and hence by reason of the provisions of Section 801 of Title 8 United States Code Annotated, plaintiff forfeited his United States nationality.

The facts do not support plaintiff's contention that he was forced against his will to become again a Japanese subject. Nor does his contention that he did not intend thereby to forfeit his United States citizenship have relevant merit. Savorgnan v. United States, 1950, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287.

The petition is denied.

Submit findings of fact and conclusions of law in accord with this opinion.