**MONACO et al.**

**v.**

**DULLES, Secretary of State.**

**No. 142, Docket 22913.**

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1954.

Decided Feb. 15, 1954.

**762**

Caputi & Caputi, New York City, (Sebastian P. Caputi, New York City, of counsel), for plaintiffs-appellants.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of N. Y., New York City (Harold R. Tyler, Jr., New York City, of counsel), for defendant-appellee.

Before FRANK, MEDINA and HINCKS, Circuit Judges.

PER CURIAM.

The government [1] concedes that Gennaro Monaco was a citizen. Accordingly, the government had the burden of proving that he had expatriated himself. We agree with Acheson v. Maenza, 92 U.S.App.D.C. 85, 202 F.2d 453, 456, which held that the burden in such a case is like that in a denaturalization proceeding, *i. e.*, the evidence of expatriation must be "clear, unequivocal and convincing".[2] We think such evidence was wanting here. The crucial issue was whether Gennaro Monaco took the oath of allegiance to the Kingdom of Ita-

---

1. For convenience, we refer to the defendant as "the government."

2. See Knauer v. United States, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500; Baum-gartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525; Schneiderman v. United States, 320 U.S. 118, 125, 63 S.Ct. 1333, 87 L.Ed. 1796.

ly. The proof offered by the government consisted of the following:

(a) Exhibit H is a document, conceded by plaintiffs to report "the law of Italy showing the requirement for taking an oath," which, *inter alia*, states this: "The oath of allegiance is administered, as a rule, 'en masse,' during the first period of military training as soon as the recruits have acquired a suitable degree of soldierly appearance in order to be in harmony with the great solemnity of the event. * * * The oath of allegiance takes place in regimental or autonomous group formation. * * * No one can belong to the Armed Forces of the State without taking the oath of allegiance."

(b) Exhibit L is a letter from an Italian Colonel which states: "This Command is not in possession of the Orders of the Day or other documents from which it would be possible to learn if Monaco may have or not taken the military oath. It is presumed that, as all other persons in the military service, Monaco took the oath about one month after his incorporation. One does not have elements to state positively whether Monaco was physically present on the day of the same oath."

(c) Exhibit M is a letter from an American Vice Consul asking, *inter alia*, the Commander of the Military District in Salerno, Italy, "whether in your opinion it can be possible that the class with which Monaco was assembled had already taken the oath when Monaco reported to arms and whether from that fact there can be probability that Monaco did not have to take the oath during that period that he remained under arms." To this the reply, in Exhibit K, was, "What is indicated in Point No. 6 may be possible."

The government relies on Exhibit H plus a presumption of the regularity of foreign-government practices. That Exhibit established merely the Italian "law." But the other exhibits put in evidence by the government show that the actual practice may have departed from the rule. Consequently any such presumption as that on which the government relies became ineffective. Absent such a presumption, the government's proof did not meet the required standard.

Reversed and remanded with directions to enter judgment for plaintiffs.