Edwin Shigeo FUKUMOTO,
Appellant,

v.

John Foster DULLES, as Secretary
of State, Appellee.

No. 13708.

United States Court of Appeals
Ninth Circuit.

Oct. 5, 1954.

Bone, Circuit Judge, dissented.

Fong, Miho, Choy & Chuck, Honolulu, T. H., A. L. Wirin and Fred Okrand, Los Angeles, Cal., for appellant.

A. William Barlow, U. S. Atty., Louis B. Blissard, Asst. U. S. Atty., Honolulu, Hawaii, Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

DENMAN, Chief Judge.

Fukumoto appeals from a judgment in a suit under 8 U.S.C. § 903 [1952 Revision 8 U.S.C.A. § 1503], denying his petition that he be declared a national of the United States, holding he had renounced his American citizenship by obtaining a restoration of his nationality in Japan after he had previously renounced it, and hence expatriated himself within 8 U.S.C. 801(a) [1952 Revision 8 U.S.C.A. § 1481(a)].[1]

Fukumoto's complaint alleges that he was born on May 6, 1921, at Wailuku, Maui, Territory of Hawaii. His parents are of Japanese descent, and by virtue of his birth of parents of Japanese descent, under the provisions of Japanese law he was born a national of Japan in addition to having been born a citizen of the United States. It further alleges that while in Japan in September, 1941, the plaintiff renounced and abandoned his Japanese nationality. Dulles agrees that these allegations state the facts.

Having thus become solely a citizen of the United States, the complaint further alleges that: "Stranded in Japan during the war, in September, 1943, the Plaintiff made an application for the recovery of his Japanese nationality; said application was made by the Plaintiff under mistake, confusion, misunderstanding and coercion, and said application was not the Plaintiff's free and voluntary act.

---

1. The pertinent portions of § 801 are as follows:

"§ 801. General means of losing United States nationality: A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

"(a) Obtaining naturalization in a foreign state, either upon his own application or through the naturalization of a parent having legal custody of such person * * *."

Said application did not constitute and does not constitute, naturalization within the meaning and intent of 8 U.S. Code, Section 801(a)."

Obviously, the mere application does not constitute naturalization in Japan. However, the case was decided by the court on the question of the involuntary nature of Fukumoto's application, as if in response to the application there had been in fact a recovery of his Japanese nationality, and for the purposes of this decision we accept the district court's treatment of the application.

The question is did Fukumoto maintain his burden of proof that he did not voluntarily renounce his allegiance for, as stated in Perkins v. Elg, 307 U.S. 325, 334, 59 S.Ct. 884, 889, 83 L.Ed. 1320. "Expatriation is the *voluntary* renunciation or abandonment of nationality and allegiance." [2]

Fukumoto strongly contends that because he was a citizen of the United States when he applied for his application for Japanese citizenship his situation is analogous to that in Schneiderman v. United States, 320 U.S. 118, 122, 63 S.Ct. 1333, 1335, 87 L.Ed. 1796, where it was stated in a proceeding to denaturalize a citizen, "the facts and the law should be construed as far as is reasonably possible in favor of the citizen." He also points out that the District of Columbia Circuit has held that in these 8 U.S.C. § 903 proceedings, once the plaintiff has shown that at the time of the renunciation of citizenship he was in fact a citizen "clear * * * and convincing evidence" is required to show that it was voluntary. Acheson v. Maenza, 92 U.S.App.D.C. 85, 202 F.2d 453, 456. The circuit of the District of Columbia has held similarly in Monaco v. Dulles, 2 Cir., 210 F.2d 760.

We think it not necessary to consider these contentions since it appears that, without applying them and on the ordinary burden of proof, the testimony not only supports Fukumoto's contention that

his application was not a voluntary act, but it is so convincingly shown by uncontradicted evidence that the judgment should have been rendered for him.

Fukumoto himself took the stand and it is apparent from his testimony that he is a candid and truthful witness. He testified that as a Nisei, that is an American born person of Japanese ancestry, he was "treated everywhere by everyone as an outcast." In the passion of this same Japanese-American war an analogous treatment of the Nisei by officers of the United States appears in Acheson v. Murakami, 9 Cir., 176 F.2d 953, another 8 U.S.C. 903 case. It is well in cases of human motivation of people of other races that we consider our own psychology.

In that case it appears that by orders of an American General, carried out by American police and other officers, 70,000 Nisei American citizens of the Pacific Coast States were indiscriminately confined for over two years in barbed wire stockades where they were placed in overcrowded prison-like structures. This was done though no act of sabotage by any Japanese citizen or much less any Nisei had been committed.

That is to say, American officers like those in Japan, treated the Nisei as "outcasts" in the full sense of that word. They were cast out of their homes for over two years, their families often separated, with a huge loss of property sold under the evacuation pressure of from one to ten days notice, and they had destroyed their businesses, their established professions and the earning power of mechanics and laborers. Over four thousand such Nisei under pressure of that outrageous treatment gave up their citizenship. We held in the case supra, before us for its restoration, that such acts of denaturalization were involuntary.

Fukumoto's uncontradicted testimony continues with two occasions when he was subject to gross brutality of the Jap-

**2.** Similarly in Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 161 F.2d 860, 868, and Attorney General of United States v. Ricketts, 9 Cir., 165 F.2d 193.

anese police. Of one of the beatings by police because a Nisei [3] he states that he was accosted by a policeman who:

"When he found out I was a Nisei, he just pulled me down to Harajuku Police Station because I was a Nisei. I couldn't think of any reason why he would pull me in.

"Q. What happened there? A. At the police station, the policeman there and jailer—I think he was a jailer—especially punished me on the head, slapped me on the face, because I was a Nisei. He said, 'Nisei, huh,' and bang, he hit me and no questions asked. I was made to stand behind a set of bars for, oh about two hours. I don't know what for. And then when they let me go I went back to my home and found that my place had been searched and everything was—the drawers were all open, papers and clothing all over the floor, and I knew that they had come over to search my place while I was standing in the police station."

The second occasion of police brutality occurred when he was walking with his fiancee whom he stated that under Japanese law he as a Nisei could not marry. He again was accosted by a policeman, who when he discovered they were not married struck him. A part of his motivating pressure leading to his application was to escape such brutality and to enable them to marry and have children. Further motivation was the fear that as a Nisei his full ration card would be taken from him, which we held in Takehara v. Dulles, 9 Cir., 205 F.2d 560 [4] to make denaturalization involuntary, and his need for increasing his half clothing allowance as a Nisei to a full one.

There is further uncontradicted evi-

dence that such police brutality to the Nisei was generally practiced by the Japanese police. Fukumoto, when he made his application, was employed upon a newspaper, the Nippon Times. An editor on that paper, Mr. Murayama, also a Nisei, testified that at the beginning of the war he "was taken to the police station where *I was beaten up and kicked* by several police officers and every one of them called me a spy and a useless Nisei and every other term you can think of under the circumstances. Toward midnight I was permitted to go home with a condition that I was not to step out of my home until further notice." He was so kept confined to his home for two months, and thus became "a jobless man."

Murayama also testified concerning another young Nisei as follows:

"Q. Did I understand you to say that certain pressure was put upon him to give up his American citizenship, or was it something else? A. Well, not only certain pressure —terrible pressure . . . beating, kicking and everything else by the Japanese police officers at Dairen, I understand."

and of several other Nisei who were held in jail simply because they had that status.

The court's opinion which purports to summarize the evidence ignores entirely this brutal conduct. It states merely that Fukumoto "found the *suspicion* of Japanese civil and military police to be *vexatious*." [105 F.Supp. 2.] It is apparent the District Court had no proper realization of what motivation drove Fukumoto to apply for Japanese citizenship.

Since the uncontradicted evidence overwhelmingly supports Fukumoto's petition, and there is no evidence to the

---

3. Dulles contends that there is doubt as to whether this occurred before or after Fukumoto filed his application but the court stated after the testimony on this brutality was concluded that it was before the application was filed and "that **thereafter** the police did not **bother him.** All of which I had previously under-

stood from the prior testimony." (Emphasis supplied.).

4. Cf. similar holdings in Hichino Uyeno v. Acheson, D.C., 96 F.Supp. 510; Meiji Fujizawa v. Acheson, D.C., 85 F.Supp. 674, 675; Acheson v. Murakami, 9 Cir., 176 F.2d 953.

contrary, the judgment is reversed and the District Court ordered to enter judgment for him. Monaco v. Dulles, 2 Cir., 210 F.2d 760, 763.

BONE, Circuit Judge (dissenting).

On the whole record I think the trial judge had a right to conclude that appellant had voluntarily abandoned his United States citizenship. I would affirm the judgment of the lower court.