**NORIO KIYAMA, Appellant,**

v.

**John Foster DULLES, as Secretary of State, Appellee.**

**MIYOKO KIYAMA, Appellant,**

v.

**John Foster DULLES, as Secretary of State, Appellee.**

**No. 15421.**

United States Court of Appeals Ninth Circuit.

Aug. 11, 1958.

Rehearing Denied Nov. 4, 1958.

Fred Okrand, Los Angeles, Cal., for appellants.

Laughlin E. Waters, U. S. Atty., Bruce A. Bevan, Jr., Richard A. Lavine, Los Angeles, Cal., for appellee.

Before FEE and CHAMBERS, Circuit Judges, and CHASE A. CLARK, District Judge.

CHASE A. CLARK, District Judge.

Complaint was filed in this case by Appellants (Plaintiffs below) on September 15, 1949. The cases were consolidated for trial and the trial had July 10, 1956 to July 13, 1956.

On August 27, 1956, the trial Judge rendered judgment in each case for the Appellee (Defendant below) and this appeal is from that judgment.

The record of the trial shows that Appellant Norio Kiyama was born on May 3, 1915, at Los Angeles, California, of Japanese parents, thus acquiring nationality of both the United States and of Japan. He was taken to Japan in 1922 and remained there to receive schooling until 1931 when he returned to the United States. He was at that time sixteen years old.

Appellant Miyoko Adachi Kiyama was born at Manhattan Beach, California, on October 21, 1921, of Japanese parents. During 1928 she was taken to Japan and remained there until sometime during 1938.

The appellants Norio Kiyama and Miyoko Kiyama were married in December, 1938. Neither ever registered to vote in an American election.

The record shows they are the parents of two children and that the births of the children in 1939 and 1941 were registered with the Japanese Consulate in order that Japanese citizenship might be obtained for the children.

On April 29, 1942, the Appellants, while residents of California, were evacuated along with other persons of Japanese descent, and were first sent to the Santa Anita Assembly Center of Arcadia, California, where they remained until about October, 1942, at which time they were transferred to the Gila River Relo-

cation Center, Gila River, Arizona. While appellants were at Gila River Relocation Center from October, 1942 to October, 1943, the Center operated, except for the inconvenience resulting from detention, in much the same fashion as a community outside of the Center. Community government was established and in operation. There was full employment. Medical facilities were adequate. Education and recreational facilities were provided. The center was relatively peaceful with few, if any, disturbances.

On February 12, 1943, Appellant Norio Kiyama signed a form entitled "Statement of United States Citizen of Japanese Ancestry". In answer to questions 27 and 28 of this form [T 17–18] Appellant stated that he was unwilling to serve in the Armed Forces of the United States and was unwilling to swear unqualified allegiance to the United States and faithfully defend it from attack by foreign forces. He also indicated that he did not desire employment in any part of the United States.

On March 1, 1943, Appellant Miyoko Kiyama indicated that she desired no employment and would not take employment in any part of the United States. She also stated that she was unwilling to volunteer for the Army Nurse Corps or the Woman's Army Auxiliary Corps and was unwilling to swear unqualified allegiance to the United States of America and to forswear allegiance to the Japanese Emperor.

On June 30, 1943, Appellant Miyoko Kiyama signed a form entitled "Individual Request for Repatriation". In executing this form the appellant requested that she be repatriated to Japan. On June 31, 1943, Norio Kiyama signed two forms entitled "Individual Request for Repatriation" and "Request for Repatriation—Family Summary". In executing these forms appellant requested that he and his family be repatriated to Japan. On July 28, 1943, Miyoko Kiyama again executed an "Individual Request for Repatriation."

During October, 1943, the appellants were transferred to the Tule Lake Segregation Center. Before being transferred they were given an opportunity to change their 'No' answers to questions 27 and 28. The appellants failed to change answers knowing if they did not do so they would be transferred to Tule Lake.

After being transferred to the Tule Lake Segregation Center, Appellant Norio Kiyama became a member of the Hokoku Seinen-dan, a militant pro-Japanese organization. Appellant Miyoko Kiyama became a member of the Hokoku Joshi Seinen-Dan, which was the counterpart of the men's organization.

On April 27, 1944, Norio Kiyama signed a form entitled "Request for Repatriation—Family Summary". On this form appellant indicated a desire that he and the members of his immediate family be repatriated as a family group.

On October 15, 1944, both Norio and Miyoko Kiyama wrote letters to the Attorney General of the United States requesting advice as to what legal steps should be taken to renounce their American citizenship and the citizenship of their family.

On November 10, 1944, Norio and Miyoko Kiyama executed and submitted to the Attorney General a form entitled "Application for Permission to Renounce United States Nationality" in which they requested that their citizenship be renounced. On November 14, 1944, Appellant Norio Kiyama wrote a letter to the Attorney General seeking to add to his application by stating that he had military training while in Japan for three years under the Japanese Army.

On December 7, 1944, a hearing on Norio Kiyama's renunciation of citizenship was held, and at this hearing Appellant stated, among other things, that he desired to renounce his American citizenship; that he signed the application to renounce freely and voluntarily; that before Pearl Harbor his loyalty was to Japan and that his loyalty was still with Japan; that he hoped and believed that Japan would win the war; that "The

Spirit of Japan is so strong it will be able to win" and that "I think the Emperor is the highest power and I worship him".

On December 7, 1944, Miyoko Kiyama's renunciation of citizenship hearing was held. At this meeting she stated, among other things, that she signed the application to renounce citizenship freely and voluntarily, that when she returned to this country in 1938 her loyalty was to Japan rather than to the United States; that before December 7, 1941, her loyalty was with Japan; that her loyalty was still with Japan; and that she would like to see Japan win the war.

Norio Kiyama renounced his citizenship at Tule Lake on December 13, 1944, by signing a form entitled "Renunciation of United States Nationality". Appellant Miyoko Kiyama renounced her citizenship on December 12, 1944. On December 23, 1944, these renunciations were approved by the Attorney General as not being contrary to the interests of National Defense.

On December 27, 1944, Norio Kiyama was removed from Tule Lake and interned at the Internment Camp at Santa Fe, New Mexico. Said appellant was designated as one of the leaders in the reign of terror in Tule Lake, referred to in Finding of Fact 35 in Acheson v. Murakami, 9 Cir., 1949, 176 F.2d 953.

On October 19, 1945, Norio Kiyama signed a form letter entitled "Petition for Repatriation" in which he requested that his family be repatriated to Japan. On or about March 1, 1945, Norio Kiyama signed and submitted to the Attorney General a letter in which, among other things, he requested that he be furnished with a Certificate of expatriation.

On September 27, 1945, while still at Santa Fe Internment Camp he signed a form entitled "Application for Repatriation" on which he indicated a desire to be repatriated to Japan unconditionally and whether or not his family accompanied him. On this form he stated, among other things, "I have been always loyal to Japan during the war and I have no intention to change my loyalty to any other country at this time."

On or about December 28, 1945, Appellants voluntarily left the United States and returned to Japan. They remained in Japan from sometime during 1946 until sometime during 1950 at which time they returned to the United States on a Certificate of Identity for the purpose of prosecuting this action.

Appellants make the following assignments of error (the same as to each appellant),

1. The trial Court erred in failing to adjudge that the Appellants are citizens of the United States and did not lose their United States citizenship by reason of their renunciations at Tule Lake;

2. The trial Court erred in failing to find, conclude and hold that Appellants' renunciations at Tule Lake were under duress and coercion;

3. The trial Court erred in holding that the burden rested upon the Appellants to prove that their renunciations of the United States nationality was involuntary;

4. The trial Court's findings and conclusions that Appellants' renunciations at Tule Lake were voluntary and not under duress and coercion is not supported by the evidence.

The record as presented here convinces this Court that there is no merit in any of the assignments of error set out by the Appellants. See Tsuyoshi Iwamoto v. Dulles, 9 Cir., 256 F.2d 100.

The acts and utterances of the appellants throughout the entire time mentioned in this proceeding leave no doubt as to where their loyalty was and would be again if tested.

Judgment affirmed.