## RYCKMAN v. ACHESON.

### Civ. A. No. 6072.

United States District Court
S. D. Texas, Houston Division.
March 27, 1952.

Wood Taylor, Jr., of Houston, Tex., for plaintiff.

Brian S. Odem, U. S. Atty., and E. H. Patton, Jr., Asst. U. S. Atty., both of Houston, Tex., for defendant.

HANNAY, District Judge.

Findings of Fact:

Plaintiff, Mrs. Lena Gertrude Ryckman, brings this suit pursuant to the Nationality Act of 1940, Section 503, 54 Stat. 1171–1172, 8 U.S.C.A. § 903, to obtain a Declaratory Judgment that she is a national of the United States of America.

The material facts in the case are chronologically as follows: Plaintiff was born in Canada in 1885. In 1910 she moved to Chicago, Illinois, with her husband, a physician, where she remained until her husband's death in 1945. She and her husband became naturalized citizens of the United States on May 27, 1941 and, after the death of her husband in January, 1945, plaintiff returned to Canada in April of that same year, in order that she might take care of her mother who was then 78 years of age and in very infirm health, having suffered several strokes and being paralyzed on her right side. In addition to these infirmities, plaintiff's mother was very hard of hearing, and her condition was such that she required constant personal attention of such a nature that could only be given by a nurse. The necessity for plaintiff's being almost constantly with her mother prevailed from April, 1945, until the date of the mother's death, which occurred some time after the submission

of this case. At several intervals during this period of time, other members of plaintiff's family were able to stay with her mother, and during these times plaintiff returned to Houston to be with her daughter, Mrs. Elliott A. Johnson, who has resided in Houston for more than 10 years.

The periods plaintiff spent in Canada and in the United States are best shown graphically as follows:

| Months spent in Canada | Months spent in U. S. | Dates |
|---|---|---|
| 7 | | April 2, 1945 — November 6, 1945 |
| | 6 | November 6, 1945 — May, 1946 |
| 5 | | May, 1946 — October, 1946 |
| | 4 | October, 1946 — March, 1947 |
| 18 | | March, 1947 — November 5, 1948 |

The sole and only reason for plaintiff's going to Canada was, as before stated, the condition of her mother, and the fact that her mother (who had no other children) had no one else to look after her and she did not have sufficient funds to secure the attention she needed even if such attention could have been procured by the payment of wages to someone to look after her. It was of such compelling necessity for plaintiff to take care of her mother as to amount to, and was, duress of such a nature that she did not, and should not have resisted. To have failed her mother at this time would have been in violation of all the instincts of loyalty of a child for its parent and contrary to the Fifth Commandment to "Honor thy father and thy mother that thy days may be long upon the land which the Lord, thy God, giveth thee. Exodus :20 :12."

Whenever it was possible for plaintiff to do so, as set out in the chart above, she returned to Houston, which she at all times after the death of her husband considered as her home. At no time did she ever understand or intend to forfeit, waive, or in any way lose her nationality and citizenship in the United States. Except for merely being in Canada, she did no act to indicate in any way that she did not desire to permanently return to her Houston home as soon as she honorably could.

Since the death of her husband in 1945, plaintiff has not had any property or income other than that given her by her daughter and son-in-law and whatever sustenance she received from her mother, and during this period she has paid her poll tax, or secured exemption from the payment of such tax, in Harris County, Texas, as a citizen of the United States, and she voted at least one time in this county by absentee ballot. She did nothing in Canada other than to stay with her mother, and she committed no act there which would jeopardize her United States citizenship.

In June, 1948, plaintiff had her American citizenship papers taken from her by the American Consul, and in June, 1950, she was formally advised that she had lost her citizenship and nationality of the United States pursuant to certificate submitted in her name to the Department of State by the American Consul at Toronto, Canada, under date of May 18, 1949, which certificate alleged that plaintiff had expatriated herself under Section 404(b), Chapter 4 of the Nationality Act, 8 U.S.C.A. § 804(b), of 1940, by "residing continuously for three years in the territory of a foreign state in which the place of her birth is situated."

This certificate is in error in stating that plaintiff had resided *continuously* in

Canada for more than three years. This is clearly shown in the above chart, which shows the periods during which plaintiff was in the United States from April, 1945, to November 5, 1948.

A formal request by Plaintiff in March, 1951, for restoration of her rights being denied, this suit followed.

Discussion:

The Government argues that the "place of principal abode" is the supreme test to be applied in determining whether or not plaintiff has lost her nationality and citizenship in the United States. It relies strongly on the case of Savorgnan v. U. S., 338 U.S. 491, 70 S.Ct. 292, 300, 94 L.Ed. 287, which held:

"Under the Act of 1940, the issue is not what her intent was on leaving the United States, nor whether, at any later time, it was her intent to have a permanent residence abroad or to have a residence in the United States. The issue is only whether she did, at any time between July, 1941, and November, 1945, in fact 'reside' abroad. The test of such 'residence' is whether, at any time during that period, she did, in fact, have a 'principal dwelling place' or 'place of general abode' abroad. She testified that, from 1941 to 1945, she lived with her husband and his family in Rome, except for six months' internment in Salzburg, Germany. Whatever may have been her reasons, wishes or intent, her principal dwelling place was in fact with her husband in Rome where he was serving in his Foreign Ministry. Her intent as to her 'domicile' or as to her 'permanent residence,' as distinguished from her actual 'residence,' 'principal dwelling place,' and 'place of abode,' is not material. She expatriated herself under the laws of the United States by her naturalization as an Italian citizen followed by her residence abroad."

Plaintiff, on the other hand, contends that "intention" is the vital test, and says that she never, at any time, had any other intention but to ultimately, when the reason for her being in Canada ceased to exist, to return to her home in Houston.

I do not agree entirely with either of these contentions and, as far as the instant case is concerned, I believe that the true test is—Was the act of plaintiff in staying in Canada her voluntary act? I think not.

"Voluntary act" is defined in the case of Kasumi Nakashima v. Acheson, D.C., 98 F.Supp. 11, 12, as follows:

"an act proceeding from one's own choice or full consent unimpelled by another's influence."

This case, 98 F.Supp. on page 13, further holds:

"The means of exercising duress is not limited to guns, clubs or physical threats. The fear of loss of access to one's country, *like the fear of loss of a loved one,* can be more coercive than the fear of physical violence." (Emphasis added.)

See, also, the case of Toy Teung Kwong v. Acheson, D.C., 97 F.Supp. 745, which was likewise a case of one attending an ailing relative. The Government failed to appeal from an adverse ruling in this case.

In the case now before the court the plaintiff, due to uncontrollable conditions, and *fearing the loss of a loved one* who was not physically able to care for herself, and who had no one else in the world to care for or stay with her, remained in Canada with her mother, as shown by the above chart, and performed her God-commanded duty to her mother, with the result that certain United States agents are now attempting to forfeit her citizenship in this country.

Canada was the only place where plaintiff's mother was able, physically and financially, to be taken care of, and plaintiff's stay in that country was for no other reason than to perform the natural duty which she owed her mother.

In the words ascribed to Robert E. Lee, "Duty then is the sublimest word in our language"

Should such a dutiful daughter be deprived of the priceless possession of her American citizenship for doing nothing other than her filial duty? I think not,

742

and in view of all the facts and circumstances in this case, I hold that plaintiff's stay in Canada was, in legal effect, involuntary and, as such, it could not be a ground for forfeiture of her nationality and citizenship in the United States of America.

Conclusions of Law:

In line with the above findings, I hold as follows:

1. This court has jurisdiction of the parties and subject matter of this suit.

2. Plaintiff's stay in Canada having been involuntary, she should not be compelled to, and she did not, lose her nationality and citizenship in the United States.

The clerk will notify counsel.