## INSOGNA v. DULLES.
### Civ. A. No. 1446–51.

United States District Court
District of Columbia.
Nov. 18, 1953.

474

Joseph J. Lyman, Washington, D. C., for plaintiff.

Leo A. Rover, U. S. Atty., Joseph A. Rafferty, Asst. U. S. Atty., Washington, D. C., for defendant.

McLAUGHLIN, District Judge.

This is an action brought under the provisions of Section 503 of the Nationality Act of 1940 for a declaratory judgment to establish that plaintiff is a citizen of the United States. 8 U.S.C. § 903 [Immigration and Nationality Act 1952, § 360, 8 U.S.C.A. § 1503]. The plaintiff was born in the United States on October 18, 1924. In 1928, shortly after her father's death, she was taken to Italy by her mother where she resided until the filing of this suit.

The Government contends that the plaintiff was expatriated in 1942 when she accepted employment in the Bureau of Vital Statistics of the Commune of Isernia, Italy. It is the Government's position that the said employment is within the scope of Section 401(d) of the Nationality Act which provides that:

"A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by: * * * (d) Accepting, or performing the duties of, any office, post, or employment under the government of a foreign state or political subdivision thereof for which only nationals of such state are eligible". 8 U.S.C. § 801(d) [Immigration and Nationality Act 1952, § 349, 8 U.S.C.A. § 1481].

Plaintiff denies she ever intended to relinquish her citizenship in the United States, and contends that the facts do not justify a finding of expatriation on ·the grounds 1) that the position she accepted was not such an office, post or employment as is contemplated by the provisions of Section 401(d) of the Act, and 2) that her acceptance of the employment was not a voluntary repudiation of her American citizenship.

The evidence presented by the plaintiff has raised grave doubts in the Court's mind as to the applicability of Section 401(d) to the instant suit. However, assuming arguendo that plaintiff has technically placed herself within the framework of Section 401(d), the Court is of the opinion, after a careful consideration of all the circumstances attending the plaintiff's acceptance of employment, and the reasonable inferences to be drawn therefrom, that said act was not a voluntary renunciation or abandonment of plaintiff's United States nationality but was the result of actual duress which overcame her natural tendencies to protect her birthright.

In Doreau v. Marshall, 3 Cir., 1948, 170 F.2d 721, 724 the Court set down the general rule as to duress as follows:

"If by reason of extraordinary circumstances amounting to true duress, an American national is forced into the formalities of citizenship of another country, the sine qua non of expatriation is lacking. There is not authentic abandonment of his own nationality. His act, if it can be called his act, is involuntary. He cannot be truly said to be manifesting an intention of renouncing his country. * * *"

The very essence of expatriation is that it be voluntary. Chief Justice Hughes speaking for the Supreme Court in Perkins v. Elg, 1939, 307 U.S. 325, 59 S.Ct. 884, 889, 83 L.Ed. 1320 said: "Expatriation is the voluntary renunciation or abandonment of nationality and allegiance." And only recently our Circuit Court of Appeals stated: "There need be no explicit renunciation of nationality, but the act which by statute results in loss of nationality must have been voluntarily done; if it was not, nationality is not lost because of it." Mendelsohn v. Dulles, D.C.Cir., 207 F.

2d 37, 38, 39. See also Acheson v. Maenza, D.C.Cir.1953, 202 F.2d 453. While the above cases did not involve Section 401(d), the Court is convinced that there is no valid reason for not holding the pronouncements applicable to Section 401(d).

Plaintiff's uncontradicted testimony is that just prior to World War II she had worked as a domestic to support her mother and sister; that with the advent of the war, the economy of the small village was so upset that she was unable to find work; that when the bombings started the people began to flee, and that in order to live she sought relief money from the mayor of the village to whom she was known to be an American; that he stated the village had no money to give, but that she was offered a job to allow her to receive some money to subsist.

 There is no legal requirement that this testimony be corroborated by documentary or other proof. Pandolfo v. Acheson, 2 Cir., 1953, 202 F.2d 38. Thus, in the absence of any showing to the contrary, the Court is of the opinion that the circumstances are such as to justify a finding that the plaintiff took the job in order to subsist. Self-preservation has long been recognized as the first law of nature. In addition, common knowledge of the economic conditions and fears prevailing in a country at war lends credence to the plaintiff's testimony. The circumstances of the acceptance of employment by plaintiff justifiably form a basis for the finding of fact, now made by the Court, that same was involuntary and based on duress. "The means of exercising duress is not limited to guns, clubs or physical threats." Nakashima v. Acheson, D.C.Cal.1951, 98 F.Supp. 11, 13. Cf. Mendelsohn v. Dulles, supra; Ryckman v. Acheson, D.C.Tex.1952, 106 F. Supp. 739; Schioler v. United States, D.C.Ill.1948, 75 F.Supp. 353.

Plaintiff, circumstances considered, is entitled to the judgment sought. Counsel will present appropriate findings of fact and order.