225 F.2d 849
 CHIN CHUCK MING and Chin Chuck Sang, by Their Next Friend
and Father, Chin Ah Poy, Appellants,
v.
John Foster DULLES, Secretary of State of the United States
of America, Appellee.
 No. 13963.
 United States Court of Appeals Ninth Circuit.
 Sept. 6, 1955.
 
 Joseph & Powers, James P. Powers, Portland, Or., J. P. Sanderson, Seattle, Wash., Rodney W. Banks, Portland, Or., for appellants.
 C. E. Luckey, U.S. Atty., Victor E. Harr, Asst. U.S. Atty., Portland, Or., for appellee.
 Before DENMAN, Chief Judge, and HEALY and BONE, Circuit Judges.
 DENMAN, Chief Judge.
 
 
 1
 Chin Chuck Ming and Chin Chuck Sang, hereafter appellants, appeal from a judgment dismissing their petition under Section 503 of the Nationality Act of 1940[1] (formerly 8 U.S.C.A. 903, now 8 U.S.C.A. 1503) on the ground, inter alia, stated by the district court, as follows:
 
 
 2
 'That the Congress in enacting Section 903, Title 8, U.S.C.A., never intended that individuals asserting claims such as that asserted by plaintiffs herein, who have lived their lives as Chinese and who have never been in the United States, have the status and right to avail themselves of Section 903, Title 8, U.S.C.A.'
 
 
 3
 We think the court erred in so construing this act for establishing a claimed existing citizenship. It ignores the provision of Section 503 that its rights are conferred alike on the litigant 'whether he is within the United States or abroad'. It ignores the statement of the Supreme Court in Kwock Jan Fat v. White, 253 U.S. 454, 464, 40 S.Ct. 566, 570, 64 L.Ed. 1010: 'It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country.'
 
 
 4
 It also ignores our prior decision in Acheson v. Yee King Gee, 9 Cir., 184 F.2d 382, where we considered and disposed of the claim of a Chinese born American citizen under Section 503.[2]
 
 
 5
 The district court further held as a ground for dismissing the action:
 
 
 6
 'That plaintiffs have failed to file a motion to accomplish substitution of John Foster Dulles, Secretary of State of the United States of America, as party defendant in place of Dean Acheson, in accordance with Rule 25(d), Federal Rules of Civil Procedure (28 U.S.C.A.).'
 
 
 7
 Concerning this, it appears that before May 25, 1953, the appellants moved the court to substitute Secretary of State John Foster Dulles for Dean Acheson who had ceased to be such Secretary, the court stating:
 
 
 8
 'Aside from that point, however, in these cases the proceeding was originally brought against Dean G. Acheson, as Secretary of State, and in each a motion has been made to substitute John Foster Dulles.'
 
 
 9
 That is to say, the appellants so moved within the six months after Dulles had succeeded Acheson as Secretary as required by F.R.C.P. rule 25(d), providing:
 
 
 10
 '(d) Public Officers; Death or Separation from Office. When an officer of the United States, or of the District of Columbia, the Canal Zone, a territory, an insular possession, a state, county, city, or other governmental agency, is a party to an action and during its pendency dies, resigns, or otherwise ceases to hold office, the action may be continued and maintained by or against his successor, if within 6 months after the successor takes office it is satisfactorily shown to the court that there is a substantial need for so continuing and maintaining it. Substitution pursuant to this rule may be made when it is shown by supplemental pleading that the successor of an officer adopts or continues or threatens to adopt or continue the action of his predecessor in enforcing a law averred to be in violation of the Constitution of the United States. Before a substitution is made, the party or officer to be affected, unless expressly assenting thereto, shall be given reasonable notice of the application therefor and accorded an opportunity to object. As amended Dec. 29, 1948, effective Oct. 20, 1949.'
 
 
 11
 Thereafter on April 6, 1953, when Acheson was no longer Secretary and Dulles was, the following motion to dismiss was made:
 
 
 12
 'The Attorney General of the United States, by and through Henry L. Hess, United States Attorney for the District of Oregon, and Victor E. Harr, Assistant United States Attorney, moves the Court for an order dismissing the above-entitled case upon the ground and for the reason that the complaint herein, on its face, shows that applications for passports have not been denied plaintiffs and therefore plaintiffs have not been denied any rights on their alleged claim of citizenship, a jurisdictional requirement under Title 8, Section 903, U.S.C.'
 
 
 13
 The usual presumption applies that the Attorney General performed his duty and did not violate it. Hence we are required to assume he did not represent Acheson, who no longer was his client, and that he represented Dulles who had succeeded Acheson. Since Dulles thus had appeared and moved to dismiss on the ground above stated, Rule 25(d) is satisfied. It became clear at that point that Dulles intended to follow the policies of his predecessor in respect to this case.
 
 The complaint alleges that:
 
 14
 'IX.
 
 
 15
 '* * * Chin Ah Poy caused to be filed with the American Consul General at Hongkong his affidavit-application dated September 6, 1951, prepared in accordance with the regulations, for travel documents for the said Chin Chuck Ming and Chin Chuck Sang so that they would be eligible to purchase transportation to the United States in order to apply for admission as citizens thereof at a port of entry under the immigration laws.
 
 
 16
 'X.
 
 
 17
 'That although the plaintiffs have been steadily available for examination by the American Consul General at Hongkong, he has not issued the requested travel documents; that the failure of the said Consul General to issue the documents after a lapse to so much time is unfair, unreasonable, arbitrary and is equivalent to a denial of the plaintiffs' applications and their rights as American citizens. * * *'
 
 
 18
 Of this failure of the State Department to act on appellants' applications for passports for over a year and three months, the district court held:
 
 
 19
 'That the application as made to the American Consulate Officer of the Department of State by plaintiffs to permit plaintiffs' entry into the United States has never been denied plaintiffs;'
 
 
 20
 We construe the words 'right or privilege as a national of the United States' of the first two lines of Section 503 to cover the right to a prompt disposition of a claimed citizens' application. Here it is an affidavit-application filed on September 6, 1951 with the American Consul General at Hongkong. It was 'for travel documents so that they would be eligible to purchase transaction to the United States in order to apply for admission as citizens thereof at a port of entry under the immigration laws,' all as alleged in paragraph IX of the complaint.
 
 
 21
 Instead of such a prompt disposition of the affidavit-application of September 6, 1951, no disposition had been made in the 15 months to December 22, 1952, when the instant suit was filed and this although the complaint alleges that 'the plaintiffs have been steadily available for examination by the American Consul General at Hongkong.'
 
 
 22
 Dulles contends that we should take judicial notice of the fact that a large number of similar applications were pending on September 6, 1951 when appellants' was filed and that Congress has not appropriated sufficient funds to give him the qualified personnel at Hongkong to enable the State Department to dispose of them in the intervening months. He makes no claim that he applied to Congress for such funds. Assuming we can take such judicial notice, we think that the right to a prompt consideration of appellants' application cannot be denied them for such a reason.
 
 
 23
 We are not here dealing with one seeking to become a citizen but with the right to establish a claimed existing United States citizenship. Such citizenship is described by the Supreme Court as regarded by many as the highest hope of civilized man. In Schneiderman v. United States, 320 U.S. 118 at page 122, 63 S.Ct. 1333, 1335, 87 L.Ed. 1796, it states: 'For it is safe to assert that nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country. It would be difficult to exaggerate its value and importance. By many it is regarded as the highest hope of civilized men.'
 
 
 24
 While the Schneiderman case involved the question of deprivation of a prior established citizenship, here a wrongful denial of claim to citizenship is also such a deprivation, and we think the rule of the Schneiderman case, 320 U.S. at page 122, 63 S.Ct. at page 1335, that 'the facts and the law should be construed as far as is reasonably possible in favor of the citizen' equally applies. Fukumoto v. Dulles, 9 Cir., 216 F.2d 553, 554; cf. Judge Healy's opinion in Acheson v. Yee Ging Gee, 9 Cir., 184 F.2d 382, 384.
 
 
 25
 So construing the facts and the law of the instant case we think the failure of Congress to supply funds for employing qualified persons to give such prompt consideration to the applications of claimed citizens does not deprive appellants of their right to such a prompt consideration.[3]
 
 
 26
 Dulles points out the various grounds on which passports may be denied. They are lack of identity of the applicant, lack of evidence, expatriation, and subversive activities and involvement in the foreign affairs of foreign countries. Dulles seems to contend that each would be a denial on a ground other than that the applicant 'is not a national of the United States' and hence there is no compliance with the first sentence of Section 503 of the act.
 
 
 27
 An analysis of this contention shows the contrary. Refusal for lack of identity of the applicant necessarily is on the ground that he is not the person claiming to be 'a national of the United States'. Similarly with a refusal for lack of evidence that he is a national, or because in the applicant's proof of his nationality he committed a fraud and hence had not proved he was such a national.
 
 
 28
 Denying a passport on the ground that the applicant has been expatriated and has lost his American citizenship is again a denial on the ground that he is not a national.
 
 
 29
 Denial of such a passport on the ground of 'subversive activities and involvement in the foreign affairs in foreign countries' would necessarily mean he had thereby lost his citizenship. One claiming he is such a national in Hongkong could be denied a visa to come to the United States only on the ground that by such activities or involvement he had lost his American nationality. His possible indictment for such acts would make the greater reason for granting the passport, if he still retained his citizenship.[4]
 
 
 30
 The complaint alleges that Chin Chuck Sang was an adult when it was filed and it is contended that his father is not shown to have been Sang's agent authorized to file an application for travel documents as alleged, supra, in paragraph IX of the complaint. It is also contended that Sang being an adult, the father has not been shown to have the power to initiate the instant litigation in Sang's behalf. With regard to each of these contentions the complaint sufficiently describes transactions 'attempted to be set forth' to permit amendment under F.R.C.P. 15(c), as follows:
 
 
 31
 '(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.'
 
 
 32
 We have so held where there has been a jurisdictional defect cured by a supplemental pleading in the case of Fujii v. Dulles, 9 Cir., 1955, 224 F.2d 906, our number 14,460, decided July 14, 1955. Sang may seek amendment of the complaint to offer a supplemental pleading in the above respect if he be so advised.
 
 
 33
 The judgment is reversed and the district court ordered to proceed with the litigation in accord with what is here held.
 
 
 34
 BONE, Circuit Judge (dissenting).
 
 
 35
 I would affirm the judgment of the lower court.
 
 
 
 [1]
 The pertinent portion of Section 503 is:
 'If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency, or executive official thereof, upon the ground that he is not a national of the United States, such person, regardless of whether he is within the United States or abroad, may institute an action against the head of such Department or agency in the District Court of the United States for the District of Columbia or in the district court of the United States for the district in which such person claims a permanent residence for a judgment declaring him to be a national of the United States.'
 The remainder of Section 503 is omitted since it applies only where a suit has been commenced before the application for the travel documents.
 
 
 [2]
 Since the prior decision there have been several to the same effect, such as Wong Wing Foo v. McGrath, 9 Cir., 196 F.2d 120, and Mar Gong v. Brownell, 9 Cir., 209 F.2d 448
 
 
 [3]
 The following cases are in accord with regard to the delay of the State Department amounting to the denial of a right to prompt action. Lee Bang Hong v. Acheson, D.C.Hawaii, 110 F.Supp. 48, 50; Lee Hong v. Acheson, D.C.N.D.Cal., 110 F.Supp. 60; Look Yun Lin v. Acheson, D.C.N.D.Cal., 95 F.Supp. 583, 584
 
 
 [4]
 State Department Regulation 51.136 specifically provides for a passport to return to the United States one likely to violate laws of the United States, in the boldface matter below:
 ' § 51.136 Limitations on Issuance of Passports to Persons Likely to Violate Laws of the United States. In order to promote the national interest by assuring that the conduct of foreign relations shall be free from unlawful interference, no passport, except one limited for direct and immediate return to the United States, shall be issued to persons as to whom there is reason to believe, on the balance of all the evidence, that they are going abroad to engage in activities while abroad which would violate the laws of the United States, or which if carried on in the United States would violate such laws designed to protect the security of the United States.'