**Giovanni STIPA, Appellant,**

v.

**John Foster DULLES, Secretary of State.**

**No. 11651.**

United States Court of Appeals Third Circuit.

Argued Nov. 18, 1955.

Decided May 16, 1956.

Filindo B. Masino, Philadelphia, Pa., for appellant.

W. Wilson White, U. S. Atty., Philadelphia, Pa., for appellee.

Before BIGGS, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

Giovanni Stipa appeals from the judgment of the United States District Court for the Eastern District of Pennsylvania dismissing his complaint seeking a judgment declaring him to be a citizen of the United States.[1]

The premise of the District Court's disposition was that Stipa had, under the provisions of Section 401(d) of the Nationality Act of 1940,[2] expatriated himself by accepting employment as an auxiliary in the Police Force of Italy. Stipa's contention that his employment was impelled by economic duress—that he "could find no work in any factory or employment whatsoever" and that he "was in need of assistance because after the war there was nothing to do in Italy" was rejected by the District Court on the ground that "economic duress" did not

1. The complaint was filed under Section 504 of the Nationality Act of 1940, 8 U.S.C. § 903, now Immigration and Nationality Act, § 360, 8 U.S.C.A. § 1503.

2. 8 U.S.C. § 801(d), now 8 U.S.C.A. § 1481(a).

constitute such "legal duress" which would avoid the expatriating effect of his conduct.[3]

 With respect to the District Court's conclusion that Stipa expatriated himself by accepting employment as an auxiliary in the Italian Police Force, it must immediately be noted that it was in the nature of an ultimate finding of fact and on that score it is well settled that such a finding is but a legal inference from other facts [4] and as such is subject to review free of the restraining impact of the so-called "clearly errone-ous" rule applicable to ordinary findings of fact by the trial court.[5]

It is appropriate to note at this point that we are concerned only with the application of Section 401(d) and with no other section of the Nationality Act of 1940.[6] That has been made clear by both Stipa and the Government on this appeal. Attention is called to that fact because in its "Opinion Sur Motion for Re-Argument" the District Court made some reference to the fact that Stipa "served in the Italian Navy" [7] and "he voted in Italy".[8]

3. The Court did not make specific Findings of Fact either in its original opinion, Sur Pleadings and Proof, filed March 8, 1945 or in its opinion Sur Motion for Re-argument, filed April 19, 1955. Neither opinion has been reported.

4. Baumgartner v. United States, 1944, 322 U.S. 665, 670-671, 64 S.Ct. 1240, 88 L.Ed. 1525.

5. Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.

6. Anent this point the District Court stated in its opinion, Sur Pleadings and Proof:

"The Government contended that the plaintiff lost his nationality by reason of several distinct acts of his in Italy but now concedes that it has made out a case as to only one of these acts, namely, 'Accepting, or performing the duties of, any office, post or employment under the government of a foreign state or political subdivision thereof for which only nationals of such state are eligible', 8 U.S.C. 801(d)."

7. Stipa voluntarily entered the Italian Navy for a 4-year term on April 5, 1936 when he was some 17½ years old; at the expiration of his enlistment "war had started and they held me by force, forcibly held me in service." (N.T. p. 6.) He was a German prisoner of war from September 9, 1943, until August 8, 1945; he was discharged from the Navy November 5, 1945. He took an oath of allegiance to Italy in February, 1937 (while he was in the Navy). He was then about 18½ years old.

On the score of Stipa's enlistment in the Italian Navy on April 5, 1936— that took place long before January 13, 1941, the effective date of the Nationality Act of 1940 and consequently that Act cannot apply to his entry into or service in the armed forces of Italy prior to that date: Perri v. Dulles, 3 Cir., 1953, 206 F.2d 586, 589; as to his service after January 13, 1941—service in the armed forces of Italy under conditions then existing has been held to have been under legal compulsion (and consequently it was not an expatriating act under Section 401 (c) ): Mandoli v. Acheson, 1952, 344 U.S. 133, 135, 73 S.Ct. 135, 97 L.Ed. 146; Acheson v. Maenza, 1953, 92 U.S.App. D.C. 85, 202 F.2d 453, 458–459; Alata v. Dulles, 1955, 95 U.S.App.D.C. 182, 221 F.2d 52; Soccodato v. Dulles, 1955, 96 U.S.App.D.C. 337, 226 F.2d 243.

As to his oath of allegiance to Italy which he took when he was 18½ years old, since he was then a minor he did not expatriate himself by reason of that fact. Mandoli v. Acheson, supra; Perri v. Dulles, supra; Soccodato v. Dulles, supra.

8. With reference to his "voting" in the Italian elections, Stipa testified that he presented himself to the voting poll " * * * because at that time the Italian authorities had placed cards posted all over the town that everyone's duty was to vote and those who did not vote would be punished according to law * * * " (N.T. p. 9). Moreover, he said that while he presented himself at the voting place he " * * * put in a blank ballot." (N.T. p. 9.)

The government made no attempt to rebut Stipa's testimony as to the pressures on him to present himself at the voting place and his further testimony that he merely cast a blank ballot; accordingly there could be no finding that expatriation took place under Section 401 (e) of the Nationality Act of 1940 which provides for loss of American citizenship for voting in an election in a foreign state, since even if he did vote it was not a voluntary act; Soccodato v. Dulles,

The relevant facts as far as Section 401(d) is concerned are disclosed by the record to be as follows:

■ Stipa was born in Plymouth, Pennsylvania, September 14, 1918 of parents who were Italian nationals and thus he acquired dual nationality in the United States and Italy under the laws of the two countries. When he was two years old, in September, 1920, his mother having died, he was taken by his father to Italy where he remained until January, 1953, when he came to this country. In November, 1945, when he was discharged from the Italian Navy (Note 7) he wrote to his brother in the United States and was advised by him that "he would eventually send (Stipa) the money to come to America." At the time of his release from the Navy Stipa "was in a very poor financial circumstance".[9] He testified: "The first job I got was to clean windows of business places, stores".[10] He sought to obtain a job "but there was no work".[11] He "was in need of assistance because after the war there was nothing to do in Italy"; he "could find no work in any factory or any employment whatsoever"; "having noticed that there were circulars around the country requesting men * * * to be employed as auxiliary police in Italy (he) proceeded to put in an application to enter this auxiliary police" and "was accepted * * * sometime in October, 1947."[12]

His sole reason for accepting the position in the auxiliary police was "for the purpose of earning a livelihood".[13] He served for two years and then resigned because he would have been required to go to a military school for further training.[14]

The record discloses that on August 25, 1947, some two months prior to joining the Italian police force, Stipa filed an "Application for (American) Passport" on a "Form for Native Citizen" with the American consul for the district of Rome, Italy. As part of his Application, and attached to it, Stipa took an "Oath of Allegiance" to the United States.[15]

On the facts as stated Stipa contended below, as he does here, that his employment in the auxiliary police force of Italy was compelled by "economic duress" and was thus involuntary and not within the strictures of Section 401(d).

The District Court did *not* find that Stipa was not subjected to "economic duress" but ruled against him on its view that only "legal duress" could avoid the effect of expatriating conduct and that "economic duress" did not constitute "legal duress".

The District Court in its Opinion Sur Motion for Re-Argument[16] stated its view as follows:

"I agree that where an American citizen accepts expatriating employ-

---

supra, Note 7, see also Tomasicchio v. Acheson, D.C.D.C.1951, 98 F.Supp. 166, 174.

9. N.T. p. 21.

10. N.T. p. 21.

11. N.T. p. 22.

12. N.T. p. 7.

13. N.T. p. 11.

14. "The reason I resigned was because an order came through that those who want to remain as Auxiliary Police would have to go to a school, military school, to become effective policemen, my intention being at the time not to serve as a police, but I wanted to come to America. I of course refused and did not sign." (N.T. p. 8.)

15. On November 12, 1947, the American vice-consul executed a "Certificate of the

Loss of the Nationality of the United States" in which it was stated:
 "That he (Stipa) has expatriated himself under the provisions of Section 401 (e) of Chapter IV of the Nationality Act of 1940, by voting in the municipal elections held at Ascoli Piceno, Italy, on April 7, 1946".
 As to this action of the vice-consul see Note 8.

16. In its original Opinion Sur Pleadings and Proof the District Court did not consider the question as to whether "economic duress" would avoid the expatriating effect of Stipa's service in the Italian police auxiliary; it dismissed Stipa's complaint on the ground that since it was the law of Italy that only Italian nationals were eligible for service in the auxiliary, Stipa's employment in it was an expatriating act.

ment with a foreign government, *if it is the law that the mere fact that he needs a job in order to make a living and is unable at the time to find any other employment constitutes legal duress, then I would have to vacate my order dismissing this complaint.*" (Emphasis supplied.)

██ In our opinion economic duress avoids the effect of an expatriating act. It is well-settled that the very essence of expatriation under any and all of the subsections of Section 401 is that the expatriating act be completely voluntary.

"Expatriation" said the Supreme Court in Perkins v. Elg, 1939, 307 U.S. 325, 334, 59 S.Ct. 884, 889, 83 L.Ed. 1320, "is a *voluntary* renunciation or abandonment of nationality and allegiance". (Emphasis supplied.)

In Doreau v. Marshall, 3 Cir., 1948, 170 F.2d 721, at page 724, we specifically ruled: "Duress as we see it is a defense to expatriation". We adhered to that view in Perri v. Dulles, 3 Cir., 1953, 206 F.2d 586 and in Lehmann v. Acheson, 3 Cir., 1953, 206 F.2d 592, 594. In Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 1947, 161 F.2d 860, 868, the rule was stated as follows: "To 'expatriate' oneself clearly implies voluntary action".[17]

"Economic duress" was held to avoid the effect of expatriating conduct under Section 401(d) in Insogna v. Dulles, D.C. D.C.1953, 116 F.Supp. 473.[18] There a dual citizen of the United States and Italy accepted government employment in Italy in order, as the District Court found, "to subsist". Under such circumstances, it was held, the acceptance of employment " * * * was the result of actual duress which overcame her natural tendency to protect her birthright * * * Self-preservation has long been recognized as the first law of nature. 'The means of exercising duress is not limited to guns, clubs or physical threats' * * * (citing cases)".

On the score of involuntary breach of the provisions of Section 401(c) it was held in Acheson v. Maenza, 1953, 92 U.S. App.D.C. 85, 202 F.2d 453, 459, that "The law does not exact a crown of martyrdom as a condition of retaining citizenship."

We had occasion to consider the impact of "economic duress" on human conduct in another field in German v. Carnegie-Illinois Steel Corporation, 3 Cir., 1948, 169 F.2d 715, 719. There a release was executed by a seaman and his employer asserted its execution was binding on him in view of the absence of any allegation of fraud, accident, mistake or deception. We held, however, that prior "economic duress" suffered by the seaman because of the employer's refusal to pay him maintenance and cure, as was its obligation under the law, constituted coercion.

Applying the principles stated we are of the opinion that "economic duress" is a defense to expatriation.

Elizarraraz v. Brownell, 9 Cir., 1954, 217 F.2d 829, cited by the government, is inapposite to the instant case. There a native-born citizen of the United States was held to have expatriated himself by accepting employment in the police force of Mexico. No issue of duress, economic or otherwise, was there involved.

A final comment.

As earlier stated the District Court did *not* base its dismissal of Stipa's complaint on a factual finding that he was not subjected to "economic duress" but on its conclusion that "economic duress" was not a legal defense to expatriation. The District Court was evidently impelled to its rejection of "economic duress" as a defense to expatriation because of its view that " * * * to sustain the plaintiff's position in this case would be practically to nullify the provision which Congress wrote into 801(d) of the statute. In any case in which a plaintiff chose to assign economic duress as an explanation of an expatriating act, all he would have to do would be to testify to that fact. Obviously, it would be prac-

---

17. See also cases cited in Notes 7 and 8.

18. It may be noted that the government did not appeal the decision.

**556**

tically impossible for this government to disprove any statements which he might make as to his particular economic situation or conditions in the particular locality in which the act took place."

In the instant case Stipa's testimony of his dire economic plight and inability to obtain employment was amply buttressed by common knowledge of the economic chaos which engulfed Italy in the post World War II years. However, independent of that circumstance, the mere fact that the government may in any case find it difficult to disprove the defense of "economic duress" is certainly not a proper ground for its summary rejection.

■■ The burden of proving expatriation generally is upon the defendant who affirmatively alleges it and the burden is a "heavy" one.[19] Factual doubts are to be resolved in favor of citizenship.[20] The burden of proof on the government in an expatriation case is like that in denaturalization; the evidence must be clear, unequivocal and convincing.[21] The rule prevailing in denaturalization cases, that "the facts and the law should be construed as far as is reasonably possible in favor of the citizen [22] equally applies to expatriation cases.[23] American citizenship is not to "be lightly taken away." [24]

■ Since in our opinion "economic duress" is a valid defense to expatriating conduct it became incumbent upon the government, under the principles stated, to rebut the proof offered by Stipa as to the existence of "economic duress". It having failed to do so Stipa was entitled to the relief he sought in his declaratory judgment proceeding.

For the reasons stated the judgment of the District Court will be reversed with directions to enter an order declaring that Giovanni Stipa is a citizen of the United States.

19. Lehmann v. Acheson, 3 Cir., 1953, 206 F.2d 592, 598; Bauer v. Clark, 7 Cir., 1947, 161 F.2d 397, certiorari denied, 332 U.S. 839, 68 S.Ct. 210, 92 L.Ed. 411, rehearing denied 332 U.S. 849, 68 S.Ct. 342, 92 L.Ed. 419.

20. Alata v. Dulles, supra, Note 7.

21. Lehmann v. Acheson, supra, Note 19.

22. Schneiderman v. United States, 1943, 320 U.S. 118, 122, 63 S.Ct. 1333, 87 L. Ed. 1796.

23. Chin Chuck Ming v. Dulles, 9 Cir., 1955, 225 F.2d 849.

24. Acheson v. Maenza, supra, Note 7.