Kazem Mohamed Abraham **MUSLEMI**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 22419.**

United States Court of Appeals Ninth Circuit.

March 17, 1969.

Milton T. Simmons (argued), of Phelan, Simmons & Ungar, San Francisco, Cal., for petitioner.

John Milano (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., Stephen Suffin, INS, San Francisco, Cal., Joseph Sureck, Regional Counsel, San Pedro, Cal., for respondent.

Before CHAMBERS, KOELSCH, and HUFSTEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Petitioner seeks review of a final deportation order of the Board of Immigration Appeals entered against him in a proceeding under 8 U.S.C. § 1252(b). Our jurisdiction rests on 8 U.S.C. § 1105a.

Deportation proceedings were instituted against petitioner on the ground that he had entered the country without an immigrant visa and that he was therefore excludable at the time of entry, 8 U.S.C. § 1182(a) (20), and was deportable pursuant to 8 U.S.C. § 1251(a) (1).

The sole issue on appeal is whether petitioner is entitled to the benefit of 8 U.S.C. § 1251(f), as that statute has been construed by the Supreme Court in Immigration and Naturalization Service v. Errico (1966) 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318.

Petitioner is a native of India and a citizen of Iran. In late 1965, at the United States Consulate in Bombay, petitioner inquired about obtaining an immigrant visa. He was advised that the immigrant quotas for both Iran and India had been filled. Petitioner then

obtained a temporary visitor's visa to the United States, stating that he intended to remain in this country for no more than three months. In fact, petitioner intended to reside here permanently. Petitioner entered the country on January 4, 1966. His temporary visa was extended to September 3, 1966.

On September 2, 1966, petitioner was notified that deportation proceedings were to be instituted against him. Five days later petitioner married an American citizen. Petitioner had met his wife in Bombay before he left India and the two had planned to marry as soon as she divorced her then husband.

At the hearing to show cause why he should not be deported, petitioner's wife filed a visa petition in his behalf, and petitioner applied for permanent residence on the basis of his marriage. The visa petition attempted to establish petitioner's status as an "immediate relative" within the meaning of 8 U.S.C. § 1151(b). That status would allow petitioner's admission to the United States as an immigrant without regard to quota restrictions imposed by 8 U.S.C. § 1152, if petitioner "otherwise qualified for admission." Petitioner's application for permanent residence was filed pursuant to 8 U.S.C. § 1255, authorizing an adjustment in the status of an alien admitted into the United States to that of an alien lawfully admitted for permanent residence. Such adjustment can be made under regulations prescribed by the Attorney General and in his discretion.

The special inquiry officer, relying on a prior administrative decision, granted the petitioner's application for permanent residence on the ground that petitioner's marital status was an equity in his favor warranting favorable administrative discretion. The Immigration and Naturalization Service appealed to the Board of Immigration Appeals ("the Board"), and the Board reversed the inquiry officer's decision on the ground that he had misinterpreted the prior decision. Petitioner was ordered deported.

Petitioner then filed with the Board a Motion to Reconsider, urging that his deportation be suspended pursuant to 8 U.S.C. § 1251(f) which provides:

"The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence."

The motion was denied, and petitioner seeks review of the Board's final order.

The Board held that 1251(f) cannot save petitioner from deportation because he is not being deported on the ground that he was excludable at the time of entry as an alien who procured a visa by misrepresentation. (*See* 8 U.S.C. §§ 1182(a) (19), 1251(a) (1).) Rather, petitioner is being deported on the ground that he was excludable at the time of entry as an immigrant without a valid unexpired immigrant visa (*see* 8 U.S.C. §§ 1182(a) (20), 1251(a) (1)); therefore, the language of the statute cannot apply to petitioner's case.

Petitioner contends that the Board's decision is contrary to the Supreme Court's interpretation of 1251(f) in Immigration and Naturalization Service v. Errico, *supra*, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318. *Errico* involved two cases in which aliens had obtained immigrant visas by misrepresentation. The misrepresentations secured for the aliens preferential status under existing quota requirements. The aliens were ordered deported on the ground that they were excludable at the time of entry because they were not nonquota immigrants as specified in their immigrant visas. (8 U.S.C. §§ 1181(a) (3), 1251(a) (1).) The aliens sought relief from deportation under 1251(f). Because the aliens were not being deported on the ground of fraud (8 U.S.C. § 1182(a) (19)), they did not come within the literal language of 1251(f). But

the Supreme Court held that the statute could not be literally applied in view of its broad humanitarian purpose to prevent the separation of family members. The Court held that 1251(f) "waives any deportation charge that results directly from the misrepresentation regardless of the section of the statute under which the charge was brought, provided that the alien was 'otherwise admissible at the time of entry.'" (385 U.S. at 217, 87 S.Ct. at 476.) Otherwise, "an alien who entered by fraud could be deported for having entered with a defective visa or for other documentary irregularities even if he would have been admissible if he had not committed the fraud." The Court further held that quota restrictions could not preclude the immigrants from being considered "otherwise admissible."

The Government seeks to distinguish *Errico*, urging that it applies only to aliens who secure entry as immigrants by misrepresentations. It argues that 1251(f) cannot apply to those who gain entry under nonimmigrant visas because a contrary interpretation would cause a wholesale deterioration of the visa issuing process.

■■■ We need not decide in general whether 1251(f) saves aliens who have fraudulently entered the country on nonimmigrant visas and who have the requisite family ties from deportation on any charge. We need decide only whether petitioner is saved from deportation on the specific charge entered against him in this proceeding. (Cf. Hirsch v. Immigration and Naturalization Service (9th Cir.1962) 308 F.2d 562, 566.) We think that deportation charge—entry without an immigrant visa—resulted directly from petitioner's fraudulent concealment of his intention to remain in this country permanently. But for that misrepresentation petitioner would not have been excludable at the time of entry. The misrepresentation was germane to the deportation charge. Petitioner is therefore saved from deportation on the charge entered against him, if he were otherwise admissible for entry as an immigrant at the time of his entry according to the Immigration and Naturalization Act, 8 U.S.C. § 1182. *Errico* establishes that quantitative limitations cannot preclude an alien from being "otherwise admissible" within the meaning of 1251(f), and this Court has held that failure to comply with documentary requirements cannot preclude an alien from being "otherwise admissible." (Errico v. Immigration and Naturalization Service (9th Cir.1965) 349 F.2d 541, 546.) Whether or not petitioner was inadmissible because of any other of the requirements of the Immigration and Naturalization Act cannot be determined on the basis of the record before us. Under the circumstances it is appropriate to remand the cause for a determination of whether petitioner was otherwise admissible at the time of his entry.

The Order is reversed.