MATTER OF STANLAKE

In Exclusion Proceedings

A-14248767

*Decided by Board December 19, 1969, as modified March 20, 1970*

In the absence of persuasive evidence that he did not intend to renounce his United States citizenship, applicant who in 1946 was voluntarily naturalized in Canada and took an oath of allegiance to that country (even though there was no oath of renunciation of U.S. citizenship) thereby transferred his allegiance which resulted in a loss of United States citizenship under section 401(a) of the Nationality Act of 1940.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant without immigrant visa.

ON BEHALF OF APPLICANT:
Marie M. Donohoe, Esquire
217 Lyon Building
607 Third Avenue
Seattle, Washington 98104
(Memorandum filed)

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney
(Memorandum filed)

B. G. Greenwald
Trial Attorney
(Brief filed)

The special inquiry officer certified his order finding the applicant an alien and excluding him as an immigrant without a visa. We shall make no change in his order.

The issue is whether the applicant's naturalization in Canada caused him to lose United States citizenship. The applicant contends expatriation did not result because he became naturalized in the belief he had to acquire Canadian citizenship in order to obtain a job as a forest ranger. He states that he did not intend to renounce United States allegiance when he became naturalized. The special inquiry officer found the applicant voluntarily became naturalized, and his assumption of Canadian allegiance was inconsistent with retention of allegiance to the United States.

The applicant, a 53-year-old male, was born in the United States. When he was about two years old, his mother, a Canadian national, took him to Canada. He remained in Canada, except for a year spent in the United States in 1936. He served in the Cana-

517

dian Army from September 1939 to October 1945. On August 13, 1946, he executed a petition for naturalization in Canada and on the same day took an oath of allegiance to King George VI after having written it out in longhand (Ex. 8). On October 18 he was granted a naturalization certificate. This is considered to be the date of his expatriation (Ex. 5). On October 21 he took an oath of allegiance with the Province of Manitoba and an oath of office as a forest ranger. He entered on duty as a forest ranger in November 1946. He held the job until June 1950. Canadian authorities have stated that Canadian citizenship was not a requirement for the position, that an oath of allegiance is not mandatory, and that an oath of office is required (Ex. 9).

The applicant was self-employed for a while. The Canadian Government paid for some training he took in the United States. He was hospitalized for a period of time. In 1962, in connection with a job in the Canadian post office department, he took an oath of allegiance to Queen Elizabeth II and also took an oath of office (Ex. 7). The applicant certified as true a post office appointment orm showing that he was "naturalized October 1946" (Ex. 6).

On September 25, 1962, the applicant secured a Canadian passort (p. 28) and filed an application for an immigrant visa with he American consul at Toronto. The records of the consul reveal hat the applicant then stated he had become a naturalized Canaian citizen (Ex. 8). He did not proceed with the application.

Applicant was admitted as a visitor at Cleveland, Ohio, on ctober 26, 1962, for a period ending March 25, 1963. On October 3, 1964, he was placed under deportation proceedings for having mained beyond the date of admission. The record of the hearing as not transcribed. It was adjourned to January 19, 1965 (Ex. . The record does not show that a hearing was held on January , but we note that exhibits in the deportation hearing were ated January 19, 1965. The applicant returned to Canada before e proceedings could be concluded.

The applicant applied for admission on December 10, 1967. His spection was deferred but was not completed, because of his ilure to appear when requested (unnumbered exhibit following . 9).

On July 8, 1968, after applying for admission as a United States izen, he was given a hearing in exclusion proceedings. The ler which the special inquiry officer certified to the Board folrcd.

At the time of the applicant's naturalization in Canada, United

States law provided that a United States citizen would lose his nationality by—

obtaining naturalization in a foreign state, * * * (section 401(a), Nationality Act of 1940, 54 Stat. 1168).

On appeal counsel contends that subjective intent controls as to whether expatriation occurred, that applicant applied for naturalization because he believed it was necessary in order to obtain a job as a forest ranger, that there is nothing in the record to show that he desired a transfer allegiance from the United States to Canada, that the oath signed by the applicant did not state he was abandoning United States citizenship, that the concept of dual citizenship is accepted, that the United States and Canada are similar and that there is traditional friendship between the countries. Counsel points out that the record does not show that applicant tried to avoid any duty or obligation imposed upon him by United States citizenship and that he claimed United States citizenship when he entered the United Staes.

The Service contends that voluntary naturalization in a foreign state coupled with an oath of allegiance is inconsistent with retention of United States citizenship and constitutes a transfer of allegiance regardless of subjective intent. We need not confront that issue in this case, for we find on this evidence that respondent has failed to establish a lack of intention to renounce his United States citizenship.

We do not believe the applicant has established that he sought naturalization in Canada because he thought it was a prerequisite to getting a job. In his application for naturalization, he stated the application was made for the following reasons: "I have been in Canada since infancy, married to a Canadian, served in the Canadian Army, and intend to remain in Canada" (Ex. 8). There is nothing about employment. Furthermore, Canadian citizenship was not a requirement for the position which the applicant held (Ex. 9).

To accept applicant's claim, in the face of the documentary evidence to the contrary, requires a finding that he is at least credible. This finding would not be justified on the record. His testimony is conflicting and uncorroborated. Although he now claims he became naturalized to take a job, when questioned under oath by the Service in July 1964, he denied that he had ever gone through a Canadian naturalization procedure. He said that he was offered a position with the Canadian Government after discharge from the army, that there was a question as to whether he could be a provincial civil servant since he was an American citi-

zen, that inquiry was made concerning this at Ottawa, Ontario, that without further ado he received naturalization papers and that he refused them (Ex. 15 of Ex. 5, pp. 3, 8). At his hearings on November 6, 1968, he stated that in 1962 he told the United States consul in Canada that he had been issued naturalization papers which he refused (pp. 15–16). He informed a Service officer in the summer of 1968 that he had refused naturalization (p. 27). He stated he had been sent naturalization papers and had returned them (pp. 34, 35). He testified he returned his naturalization certificate to the Canadian authorities while he was a forest ranger (p. 37). (There is no record of this.) Applicant first denied taking an oath of allegiance in connection with the naturalization, but then stated he did remember taking it and that he had to feed his family (p. 36). At the hearing counsel conceded the applicant had voluntarily applied for Canadian naturalization (p. 46).

Applicant's testimony that he never claimed Canadian nationality is refuted by the document he signed in connection with post office employment showing that he is a naturalized British subject (Ex. 6). He denied he had sworn allegiance to the Queen when he took the job with the post office (p. 3 of Ex. 15 of Ex. 5), yet the record contains a card he signed which shows that he took an oath of allegiance to the Queen (Ex. 7 of Ex. 15).

When one voluntarily takes the nationality of another country and takes an oath of allegiance to that country, whether or not it contains a renunciation of former allegiance, the normal inference is that there has been a transfer of allegiance from the old country to the new. The promise to be faithful and bear true allegiance to the new soverign does not ordinarily contemplate continued allegiance to the old. While such continued allegiance may be possible, we do not find it here. The applicant had lived the major portion of his life in Canada. He stated in his petition for naturalization that he intended to remain in Canada. He did remain for many years. He fought in the Canadian Army; he had Canadian wife; he made no effort to inquire as to the effect of the naturalization upon his United States citizenship. He claimed Canadian nationality when he took jobs as a ranger and in the post office. He took the oath of allegiance three times. He entered the United States as an alien visitor. Finding no persuasive evidence that the applicant did not intend to renounce United States citizenship, we see no reason why we should not take the normal inference from his conduct in seeking foreign naturalization.

We distinguish this case from *Baker v. Rusk*, 296 F. Supp.

1244 (C.D. Cal. 1969), cited by counsel. In *Baker* the court held that a native born United States citizen did not become expatriated by taking an oath of allegiance in 1926 to King George V in connection with admission to the practice of law in Canada, because the Government failed to establish that he had abandoned allegiance to the United States. Baker did not seek to become a naturalized Canadian citizen. He did not become a Canadian citizen by taking the oath. There was no evidence that he ever considered himself a Canadian citizen, and he performed no other expatriating act. In the instant case, applicant deliberately sought to become a Canadian citizen; he thereafter represented himself to be a Canadian citizen.

It was stipulated that applicant voluntarily sought naturalization. Had there been no stipulation the burden would be upon the applicant of showing that the naturalization was not voluntary. Section 349(c) of the Act; 8 U.S.C. 1481(c). In this regard, his case differs from that of *Matter of Susan B. Anthony Lewis* (A–823447, BIA, June 26, 1969), where the issue was whether the individual had acted voluntarily.

We draw no adverse inference from the fact that on July 2, 1963, the applicant filed an application for a certificate of Canadian citizenship to replace the one which he had lost. He states that this was done at the behest of the Service which was investigating his case. There is no contradiction of this testimony.

Counsel contends that Congress has no power to expatriate. We are without power to consider such a contention, *Matter of L——*, 4 I. & N. Dec. 556 (BIA, 1951).

Counsel contends that exclusion of the applicant would be a serious matter to his employer since his job is to care for animals used in research, and there is difficulty in filling such a position. A finding that applicant lost United States citizenship does not mean he is barred from the United States forever. If his employment is as difficult to fill as counsel claims, he should be able to obtain a visa for permanent residence. The Service has indicated it will do what it can to help the applicant adjust his status.

**ORDER:** No change is made in the special inquiry officer's order.