## MATTER OF WAYNE

### In Deportation Proceedings

### A-20935279

### *Decided by Board June 28, 1977*

(1) In order to determine whether voluntary naturalization in a foreign state coupled with an oath of allegiance is inconsistent with a retention of United States citizenship under section 349(a) of the Immigration and Nationality Act, it is proper to examine the subjective intent of the individual.

(2) Voluntary performance of an act declared to be expatriative under section 349(a) of the Act and which manifestly involves a dilution of allegiance to the United States should be considered highly persuasive evidence of an intent to abandon United States citizenship. This inference of intent may be rebutted with proof that the person did not intend thereby to relinquish citizenship.

(3) Respondent here, before making application for Canadian citizenship, wrote to the U.S. Consul to ascertain its effect on his U.S. citizenship and the import of the response was that acquiring Canadian citizenship would not jeopardize his United States citizenship status or rights.

(4) The burden of proof is on the Government to prove expatriation by clear, convincing and unequivocal evidence. The letter from the consul casts a cloud over what otherwise might be regarded as a clear demonstration of voluntary relinquishment of citizenship. Under the circumstances it has not been clearly established that respondent is an alien subject to deportation proceedings. The decision of the immigration judge is reversed, and the proceedings are terminated.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Immigrant—not in possession of immigrant visa or other valid entry document

ON BEHALF OF RESPONDENT:  
Pro se

ON BEHALF OF SERVICE:  
George H. Hunter  
Acting Trial Attorney

BY: Milhollan, Chairman; Wilson, Appleman, and Maguire, Board Members

In a decision dated January 13, 1977, the immigration judge found the respondent deportable under section 241(a)(1) of the Immigration and Nationality Act, as an immigrant alien who had entered the United States not in possession of an immigrant visa or other valid entry document. Pursuant to 8 C.F.R. 3.1(c), the immigration judge has

certified his decision to us for review. The decision of the immigration judge will be reversed, and the proceedings will be terminated.

At the deportation hearing on November 10, 1976, the 59-year-old respondent admitted that he was a native of the United States and a citizen of Canada, and that he entered the United States on September 1, 1976, without possession of a valid immigrant entry document. He denied, however, that he was not a citizen of the United States. The sole issue at the deportation hearing was therefore whether the respondent, a citizen of the United States by birth and a continuous resident of this country until 1969, lost his United States citizenship when he became a citizen of Canada in 1974.

The respondent, a teacher, testified that in 1969, after being divorced by his wife in Colorado, he received an offer of employment from a school in Canada. He accepted this offer, and upon his arrival in Canada, he sought and obtained landed immigrant status in that country. He taught in Canada while in landed immigrant status for some five years. The respondent further testified, and the Government did not dispute, that a person who is not a Canadian citizen is precluded from obtaining a permanent teaching certification under the laws of Canada. As a landed immigrant, he was only entitled to a temporary certification. Therefore, he decided to seek Canadian citizenship.

Before he did so, however, the respondent addressed a letter to the United States Consul General in Calgary, Alberta, Canada, requesting information concerning the effect of his prospective Canadian citizenship upon his United States voting rights, his rights as a veteran in the United States Armed Forces, and his rights under the United States Social Security laws (Ex. 2). The reply letter, written to the respondent by the United States Consul, stated that as a result of the decision of the United States Supreme Court in *Afroyim* v. *Rusk*, 387 U.S. 253 (1967), "a person who holds both U.S. and Canadian citizenship may exercise the voting privilege in Canada without endangering his claim to United States citizenship. . . . " (Ex. 2) The respondent thereupon applied for and was accorded Canadian citizenship. The respondent testified at the hearing that he believed, on the basis of the letters he had received, that his Canadian citizenship would not endanger his continued United States citizenship.

In finding that the respondent had voluntarily renounced his United States citizenship, the immigration judge relied upon his oath of allegiance to the British Monarchy, executed concomitantly with his naturalization. He also found that the respondent had "stripped himself of all ties" to the United States. Reasoning that the burden was upon the respondent to establish that he did not intend to renounce his United States citizenship by the acquisition of Canadian citizenship, the immigration judge found that the respondent had not borne this burden. He

therefore found that the respondent was an alien, and found him deportable on the charge contained in the Order to Show Cause.

In *Matter of Stanlake*, 13 I. & N. Dec. 517 (BIA 1969, modified 1970), we reserved decision on the issue of whether voluntary naturalization in a foreign state, coupled with an oath of allegiance to that state, is inconsistent with a retention of United States citizenship, regardless of the subjective intent of the person acquiring the foreign citizenship. The respondent in *Matter of Stanlake, supra,* had stated in his application for Canadian citizenship that he had been in Canada since infancy, that he was married to a Canadian citizen, that he had served in the Canadian Army, and that he intended to remain in Canada. Similarly, we found that the respondent had "made no effort to inquire as to the effect of the naturalization upon his United States citizenship." *Matter of Stanlake, supra,* at 520. We concluded from the evidence that the respondent had failed to rebut the Government's proof that he had in fact intended to renounce his United States citizenship.

Under section 349(a), a person who is a national of the United States either through birth or naturalization will lose his nationality by (1) obtaining naturalization in a foreign state upon his own application, or (2) taking an oath or making an affirmance or other formal declaration of allegiance to a foreign state. The respondent admits to having voluntarily performed acts declared to be expatriative under section 349. However, he argues that it was never his intent to thereby relinquish his United States citizenship. We must therefore reach the issue reserved in *Matter of Stanlake, supra,* and decide whether voluntary naturalization in a foreign state coupled with an oath of allegiance is inconsistent with a retention of United States citizenship, regardless of the respondent's subjective intent to retain United States citizenship.

Prior to 1967, expatriation could occur automatically upon the voluntary performance of any of the acts in section 349 declared by Congress to be expatriative. See *Perez v. Brownell,* 356 U.S. 44 (1957). Thus, there existed no requirement that a person committing an act within that section know that the commission resulted in a loss of United States citizenship.

However, in *Afroyim v. Rusk, supra,* the Supreme Court held that voting in a foreign election, an expatriative act under section 401 of the Nationality Act of 1940 [1], could not constitutionally result in a loss of citizenship without a showing that the act was accompanied by a "voluntary renunciation of citizenship." 387 U.S. at 256. The holding in *Afroyim*, therefore, "circumscribed . . . the clear language of section 349," mandating a "look behind (the person's) bare conduct to determine

---

[1] Now section 349(a)(5) of the Nationality Act of 1952.

whether he intended . . . to forego his claim to citizenship." *United States* v. *Matheson*, 532 F.2d 809 at 814 (2 Cir. 1976).

However, the Court's opinion in *Afroyim* did not address the issue of whether certain acts declared expatriative in section 349(a) are in themselves of such a nature that their commission could properly be regarded as indicative of an intent to relinquish citizenship. See *King* v. *Rogers*, 463 F.2d 1188, 1189 (9 Cir. 1972). In an attempt to clarify the effect of the decision in *Afroyim* upon the administration of section 349, the Attorney General in 1969 published an opinion setting out the views of the Department of Justice (Op. Atty. Gen. Vol. 42, Op. No. 34, January 18, 1969). It is to this interpretation which we must turn in assessing the expatriative effect of the respondent's Canadian naturalization.

Reasoning from previous dissenting opinions authored by various key members of the five-man majority in *Afroyim*, the Attorney General concluded that there might be some acts which in themselves indicate a voluntary transfer of allegiance and an abandonment of citizenship.[2] He therefore directed that section 349 be administered in such a way that ". . . 'voluntary relinquishment' is not confined to a written renunciation as under section 349(a)(6) and (7) . . . (but) can also be manifested by other actions declared expatriative under the act, if such actions are in derogation of allegiance to this country." Op. Atty. Gen., *supra*, at 4. However, giving due respect to the requirement in *Afroyim* that a renunciation be voluntary, the Attorney General stated: "Yet even in those cases (in which the expatriative act is deemed to manifest an intent to renounce allegiance to the United States), *Afroyim* leaves it open to the individual to raise the issue of intent." Ibid at 4.[3]

We interpret the Attorney General's opinion to mean that the voluntary performance of an act declared to be expatriative under section 349(a) of the Act and which manifestly involves a dilution of allegiance to the United States should be considered highly persuasive evidence of an intent to abandon United States citizenship. However, this inference of intent may be rebutted with proof that the person did not intend thereby to relinquish citizenship. But cf. *United States* v. *Matheson*, *supra*.

The respondent has performed two acts declared to be expatriative

[2] The Chief Justice, in his dissent in *Perez* v. *Brownell supra*, stated: "It has been long recognized that citizenship may not only be voluntarily renounced through the exercise of the right of expatriation, but also by other actions in derogation of unqualified allegiance to this country . . . Nearly all sovereignties recognize that acquisition of foreign nationality ordinarily shows a renunciation of citizenship . . . Any action by which (a person) manifests allegiance to a foreign state may be so inconsistent with the retention of citizenship as to result in a loss of that status." 356 U.S. at 68.

[3] See, e.g., the opinion of the Attorney General in *Matter of Becher*, 12 I. & N. Dec. 380 (BIA 1965; A.G. 1967). See also section 349.1(d)(2)(i), Service Operations Instructions (Interpretations).

under section 349. He has obtained naturalization in a foreign state upon his own application, an act declared to be expatriative under section 349(a)(1), and he has taken an oath of allegiance to a foreign state, an act declared expatriative under section 349(a)(2).[4] These are acts which are in derogation of unqualified allegiance to the United States and which raise an inference that a renunciation of United States citizenship was thereby intended. See *Perez* v. *Brownell*, dissenting opinion of Mr. Chief Justice Warren, *supra*. The Government, therefore, has established a prima facie case of loss of citizenship based upon acts from which, in the absence of countervailing evidence from the respondent, intent will be inferred.

However, the respondent has offered considerable proof that he did not intend to relinquish his United States citizenship by performing these acts. In his letter of June 29, 1973, to the United States Consul General in Calgary, Alberta, Canada, the respondent clearly evidences a desire *not* to jeopardize his United States voting rights. The inference to be drawn from this letter is that he would not have proceeded with his Canadian naturalization if he had thought that his United States citizenship would be endangered thereby. The letter from the Consul General written in response, while apparently misunderstanding the specific thrust of the respondent's inquiry, nonetheless clearly states, albeit erroneously, that "a person who holds both United States and Canadian citizenship may exercise the voting privilege in Canada without endangering his claim to United States citizenship" (Ex. 2). The clear import of this letter is that naturalization in Canada would not jeopardize the respondent's United States citizenship. Cf. *King* v. *Rodgers*, *supra*; *Jolley* v. *United States*, 441 F.2d 1245 (5 Cir.), cert. denied 404 U.S. 946 (1971).

It is the Government's burden to prove expatriation by clear, convincing and unequivocal evidence. Cf. *Schneiderman* v. *United States*, 320 U.S. 118, 158 (1943). The effect of the letter from the consular office is to cast a cloud on what might otherwise be regarded as a clear demonstration of voluntary relinquishment. Under the circumstances we find that it has not been satisfactorily established that the respondent is an alien subject to deportation proceedings. The decision of the immigration judge will be reversed.

ORDER: The decision of the immigration judge is reversed and the proceedings are terminated.

---

[4] Since the respondent was employed as a teacher in a private school in Canada, and was not offered continued employment when this institution was incorporated into the public school system, the respondent has not violated section 349(a)(4). Similarly, the Government has not established that the respondent's naturalization procedure involved a renunciation of allegiance to the United States.