## MATTER OF KEKICH

### In Visa Petition Proceedings

### A-23195764

*Decided by Board November 16, 1984*

(1) Where expatriation is in issue, commission of any of the acts specified in section 349(a) of the Immigration and Nationality Act, 8 U.S.C. § 1481(a) (1982), may be viewed as highly persuasive evidence of an intent to abandon United States citizenship; and under section 349(c), the Government satisfies its evidentiary burden by showing by a preponderance of the evidence that the citizen has committed an intentional expatriating act. *Matter of Wayne.* 16 I&N Dec. 248 (BIA 1977), overruled (as to evidentiary standard to be applied).

(2) Citizenship will not be lost when the citizen commits an expatriating act under circumstances involving duress, mistake, or incapacity negating a free choice; however, a presumption exists under section 349 that an expatriating act is voluntary unless rebutted.

(3) Where the petitioner failed to distinguish between coercion and motivation, the Board of Immigration Appeals concluded that her naturalization in Venezuela was not the result of coercion, but rather the result of personal choice, and consequently voluntary.

ON BEHALF OF PETITIONER: Harry Kobel, Esquire
Rosin and Kobel, P.C.
2156 Penobscot Building
Detroit, Michigan 48226

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

The petitioner has applied for visa preference status on behalf of the beneficiary as the spouse of a United States citizen under section 201(b) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b) (1982). In a decision dated February 24, 1983, the district director denied the petition. The petitioner has appealed. The appeal will be dismissed.

The petitioner, a naturalized citizen of Venezuela, is a native of the United States, having been born in Butte, Montana, on March 21, 1918. The beneficiary, also a naturalized citizen of Venezuela, was born on April 16, 1911, in Yugoslavia. They were married in

Venezuela on May 12, 1962. Both currently reside in Michigan. The petition was filed on June 25, 1981. The district director denied the petition on the grounds that the petitioner had failed to satisfy her burden of proof regarding her status as a United States citizen by overcoming the evidence (obtained from State Department records) that, prior to the filing of the petition, she had voluntarily and intentionally expatriated herself on September 25, 1963, pursuant to section 349(a)(1) of the Act, 8 U.S.C. § 1481(a)(1) (1982), by becoming a naturalized citizen of Venezuela.[1]

In visa petition proceedings, the burden of proof to establish eligibility for the benefit sought rests upon the petitioner. *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). The sole issue before us is whether the petitioner has carried that burden in regard to establishing that she is a United States citizen.

On appeal, the petitioner, through counsel, contends that the district director erred in his conclusion that she had freely relinquished her United States citizenship at the time of her naturalization in Venezuela. She urges that the district director failed to accord adequate weight to her affidavit of June 12, 1981. In that affidavit she recites that her husband was seriously ill in 1963 and that, based on information she had received from Venezuelan officials, she feared that if her husband died, she might forfeit inheriting her husband's property if she remained a non-citizen of Venezuela. Moreover, she feared, as an alien, that at some future time Venezuelan officials might not renew her permission to remain in that country. On the basis of these facts, she argues that her naturalization in Venezuela must be viewed as involuntary.

The petitioner also argues that under the restrictive guidelines for expatriation enunciated by the Supreme Court in *Vance v. Terrazas*, 444 U.S. 252 (1980), the evidence in the record does not justi-

---

[1] Section 349 states in pertinent part:

(a) From and after the effective date of this Act a person who is a national of the United States whether by birth or naturalization, shall lose his nationality by—
    (1) obtaining naturalization in a foreign state upon his own application. . . .

. . . .

(c) Whenever the loss of United States nationality is put in issue in any action or proceeding commenced on or after the enactment of this subsection under, or by virtue of, the provisions of this or any other Act, the burden shall be upon the person or party claiming that such loss occurred, to establish such claim by a preponderance of the evidence. Except as otherwise provided in subsection (b), any person who commits or performs, or who has committed or performed, any act of expatriation under the provisions of this or any other Act shall be presumed to have done so voluntarily, but such presumption may be rebutted upon a showing, by a preponderance of the evidence, that the act or acts committed or performed were not done voluntarily.

fy the district director's conclusion that at the time of her naturalization in Venezuela she had the requisite intent to relinquish her United States citizenship. *See also Afroyim* v. *Rusk,* 387 U.S. 253 (1967); *Matter of Wayne,* 16 I&N Dec. 248 (BIA 1977). In support of this argument, the petitioner suggests that the State Department's form affidavit (relied upon by the district director) which she signed in 1976, is ambiguous as to her intent to relinquish her United States citizenship. Specifically, she urges that the manner in which it was typed leaves doubts as to the meaning of its contents. She also raises the possibility that she may not have understood "the words to which she was attesting." We find the petitioner's arguments unpersuasive.

In regard to the petitioner's first claim (that she did not voluntarily seek Venezuelan naturalization), we initially note that section 349 of the Act specifies that if any person commits any of the expatriating acts enumerated therein, there is a rebuttable presumption that such acts were committed voluntarily, and that the Supreme Court has not found such a presumption to be constitutionally infirm. *See Vance* v. *Terrazas, supra,* at 253. Secondly, the petitioner's argument in this regard appears to confuse the distinction between coercion and motivation. While it is clear that citizenship will not be lost when the citizen commits an expatriating act under circumstances involving duress, mistake, or incapacity negating a free choice,[2] there is little support for the proposition that if the alternatives are painful, or a commendable motive is involved, an otherwise free choice may be viewed as an involuntary action, thereby exculpating the citizen from the consequence of his expatriating act or acts.[3] While we understand the difficulty of the

---

[2] Duress: *Nishikawa* v. *Dulles,* 356 U.S. 129 (1958) (compulsory military service); *Fukumoto* v. *Dulles,* 216 F.2d 553 (9th Cir. 1954) (community and economic pressures in wartime); *Acheson* v. *Murakami,* 176 F.2d 953 (9th Cir. 1949) (internment and community pressure).

Mistake: *Lee Wing Hong* v. *Dulles,* 214 F.2d 753 (7th Cir. 1954); *Podea* v. *Acheson,* 179 F.2d 306 (2d Cir. 1950) (improper refusal of United States passport); *Baker* v. *Rusk,* 296 F. Supp. 1244 (C.D. Cal. 1969) (misunderstanding concerning purpose for oath of allegiance); *Matter of Wayne, supra; Matter of S–,* 8 I&N Dec. 226 (BIA 1958) (erroneous official advice concerning loss of citizenship). *Contra Matter of Graham,* 10 I&N Dec. 533 (BIA 1964) (erroneous advice of a *foreign* government official did not preclude loss).

Incapacity: *Pandolfo* v. *Acheson,* 202 F.2d 38 (2d Cir. 1953) (took oath of allegiance while minor); *Matter of Sinclitico,* 15 I&N Dec. 320 (BIA 1975) (proof of mental incompetence rebutted presumption that Canadian naturalization was voluntary).

[3] *Jolley* v. *INS,* 441 F.2d 1245 (5th Cir.), *cert. denied,* 404 U.S. 946 (1971) (opposition to Vietnam War); *Prieto* v. *United States,* 289 F.2d 12 (5th Cir. 1961); *Jubran* v. *United States,* 255 F.2d 81 (5th Cir. 1958) (family influence did not constitute coer-
*Continued*

perceived alternatives confronting the petitioner in 1963,[4] we nonetheless conclude that the petitioner's naturalization in Venezuela was not the result of coercion, but rather the result of personal choice, and consequently voluntary. See Jolley v. INS, 441 F.2d 1245 (5th Cir.), cert. denied, 404 U.S. 946 (1971).

We also find no merit in the petitioner's contention that she lacked the requisite intent to relinquish her United States citizenship at the time of her naturalization in Venezuela. We initially note that the Supreme Court has not withdrawn from its longstanding position that any of the acts specified in section 349(a) of the Act may be viewed as highly persuasive evidence of an intent to abandon United States citizenship. Vance v. Terrazas, supra, at 261; see also Nishikawa v. Dulles, supra, at 139 (Black, J., concurring). Secondly, the Court has held that the Government satisfies its evidentiary burden under section 349(c) of the Act by showing by a preponderance of the evidence that the citizen has committed an intentional expatriating act.[5] Vance v. Terrazas, supra, at 265–66; see also Matter of Davis, 16 I&N Dec. 514, 521–22 (BIA 1978). Examining the evidence before us within these guidelines, we note that the record contains a Certificate of Loss of Nationality (Form FS-348), dated May 6, 1976, by the State Department, reciting that as a consequence of her naturalization in Venezuela upon her own application, the petitioner expatriated herself on September 25, 1963, pursuant to section 349(a)(1) of the Act. The record also includes an affidavit prepared pursuant to State Department regulations[6] and executed by the petitioner on May 6, 1976, before a

_____

cion); cf. Mendelsohn v. Dulles, 207 F.2d 37 (D.C. Cir. 1953) (necessity to care for critically ill spouse); Takehara v. Dulles, 205 F.2d 560 (9th Cir. 1953) (upbringing necessitated obedience to parental wishes).

[4] The record contains a memorandum from the Hispanic Law Division of the Library of Congress (in response to the district director's request for information concerning Venezuelan immigration and nationality laws) stating in effect that under Venezuelan law there was no basis for the petitioner's fears that if she did not become a naturalized Venezuelan citizen, she would risk (in the event of her husband's death) the loss of her rights of inheritance as well as her privilege of remaining lawfully in that country.

[5] To the extent it is inconsistent with the Supreme Court's decision in Vance v. Terrazas, supra, regarding the evidentiary standard to be applied in establishing expatriation under the Act, we withdraw from our decision in Matter of Wayne, supra.

[6] The relevant regulation, 22 C.F.R. § 50.41(c) (1984), provides:

Whenever a person admits that he has expatriated himself by the voluntary performance of one of the acts or fulfillment of one of the conditions specified in Chapter 3, Title III of the Immigration and Nationality Act of 1952 or section 401 of the Nationality Act of 1940, and consents to the execution of an affidavit to that effect, the diplomatic or consular officer shall recite in or attach to the certificate the person's affidavit.

United States consul, which states that her naturalization in Venezuela was undertaken by her voluntarily, and not as a result of influence, compulsion, force, or duress. Additionally, her affidavit states that this act of naturalization was undertaken with the intention of relinquishing her United States citizenship.

In rebuttal of this evidence the petitioner has offered only self-serving sworn statements (drafted more than 5 years subsequent to the State Department affidavit) from her husband and herself describing the difficult circumstances surrounding her decision to obtain Venezuelan citizenship. These affidavits notwithstanding, we find no probative evidence in the record, either new or contemporaneous with the petitioner's naturalization, that contradicts the unambiguous content of her 1976 sworn statement to a United States consul.[7] Therefore, we conclude that the petitioner has failed to carry her burden of establishing her status as a United States citizen. Having so failed, the petitioner cannot accord the beneficiary status as the spouse of a United States citizen. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

[7] Notable in its absence from the record is any sworn statement by the petitioner in support of the speculations raised in her appellate brief that the typed portions of her State Department affidavit (relating to her intent to relinquish her United States citizenship) may be unclear, and that her knowledge of English at the time of her 1976 visit to the consular office may have been insufficient to understand the meaning of the language to which she was attesting.

MATTER OF PORTUGUES DO ATLANTICO INFORMATION BUREAU, INC.

In Visa Petition Proceedings

NEW-N-27939

*Decided by Commissioner September 27, 1984*

(1) The proposition that experience is the same as or generally can be substituted for the normal educational requirements for a particular position is erroneous.

(2) Individuals lacking the particular degrees normally prerequisite to professional practice in their fields of endeavor may be classified as professionals in rare instances where they occupy clearly professional positions, have substantially completed normal educational requirements for the position they occupy, are recognized and permitted to practice as professionals. Case law also accommodates those instances where individuals attain professional standing through directed experience and specialized instruction recognized by appropriate professional bodies as a form of preparation for the practice of particular professions, *e.g.*, "reading" law.

(3) A professional position is one which requires a standard and at least baccalaureate level of university education for practice, in which that education is applied, and which requires extensive autonomous application of individual professional knowledge to particular fact situations.

ON BEHALF OF PETITIONER: Elaine F. Shea
600 Madison Avenue
New York, New York 10022

The petition was denied by the district director, Newark, New Jersey. Appeal taken from that decision was dismissed. The petitioner now moves that that appeal be reopened and reconsidered. The motion is granted.

The petitioner is a firm engaged in international currency transfers which seeks to employ the beneficiary as a supervisor of immigrant remittances pursuant to section 101(a)(15)(H)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(i) (1982), which provides for the classification as a nonimmigrant of:

an alien having a residence in a foreign country which he has no intention of abandoning . . . who is of distinguished merit and ability and who is coming temporarily to the United States to perform services of an exceptional nature requiring such merit and ability.

194

Distinguished merit and ability are established in one of two ways. First of all, persons classifiable as professionals within the meaning of section 101(a)(32) of the Act, 8 U.S.C. § 1101(a)(32) (1982), are classifiable as aliens of distinguished merit and ability. *Matter of General Atomic Company*, 17 I&N Dec. 532 (Comm. 1980); *Matter of Essex Cryogenics Industries, Inc.*, 14 I&N Dec. 196 (Dep. Assoc. Comm. 1972). Second, aliens of prominence, renown, or pre-eminence in their field of endeavor are classifiable as aliens of distinguished merit and ability. *Matter of Shaw*, 11 I&N Dec. 277 (D.D. 1965); H.R. Rep. No. 851, 91st Cong., 2d Sess. 2, *reprinted in* 1970 U.S. Code Cong. & Ad. News 2750.

The district director denied the petition upon concluding that the beneficiary is not classifiable as an alien of distinguished merit and ability and that the position offered the beneficiary does not constitute exceptional services requiring a distinguished level of merit and ability. The decision of the district director was reviewed and wholly upheld by us on appeal.

The petitioner now argues that our consideration of the matter was deficient. The petitioner concedes the beneficiary's lack of prominence or renown but argues as follows concerning the district director's conclusion that the beneficiary could not be regarded as possessing a bachelor's degree or the equivalent, the standard entry level of education in some professional areas:

> Although it is customary to submit a baccalaureate degree or its equivalent, it is *well known* to the INS and the immigration bar that there is *no credential evaluating service* in the country which evaluates experience. To prejudice petitioner's and beneficiary's ability to obtain an H-1 visa due to the impossibility of having experience evaluated by any known credential evaluating service imposes an undue hardship unintended by the statute.

This is a curious argument. Credential evaluation services do not evaluate experience because experience is not education and does not result in attainment of academic credentials. We are quite undisturbed by this eventuality. The argument above quoted appears to stand for the venerable but erroneous proposition that experience is the same as or can be substituted for education. In point of fact, case law accommodates those rare instances where individuals without the normal academic qualifications required, manage, through extraordinary personal ability, to occupy clearly professional positions, usually after completion of virtually all normal coursework required but lacking a corresponding degree. *Cf. Matter of Yaakov*, 13 I&N Dec. 203 (R.C. 1969); *Matter of Bienkowski*, 12 I&N Dec. 17 (D.D. 1966). Case law also accommodates those rare instances where individuals attain professional standing through directed experience and specialized noninstitutional instruction, as in

"reading" law, where such a program is recognized by appropriate professional bodies as a form of preparation for practice of that profession. *Matter of Shin,* 11 I&N Dec. 686 (D.D. 1966). The cited case law and its statutory and regulatory foundation do not stand for the proposition that longevity in a particular nonprofessional occupation demonstrates a professional level of ability or merit on the part of the incumbent.

Various provisions of the Immigration and Nationality Act cause various immigrant and nonimmigrant classifications, and, consequently, entry into the United States, to be more readily available to professional workers than to other workers. There is thus a natural tendency on the part of employers who desire to obtain the services of a particular alien employee in as expeditious a fashion as possible to attempt to clasify nonprofessional functionaries as professionals for immigration purposes in order to avoid the more extensive administrative procedures attendant on other immigrant and nonimmigrant classifications. This appears to have occurred in this instance.

A professional position is one which requires a standard and at least baccalaureate level of university education for practice, in which that education is used and applied, and which requires extensive autonomous application of individual professional knowledge to particular fact situations. The beneficiary in this instance holds a 2-year degree in commerce and has been employed by a bank for 8 years as a specialist in remittances by individuals of currency from abroad to Portugal, a position requiring knowledge of domestic and Portuguese law relating to currency transfers. This is not professional practice. The incumbent of this position must be aware of a highly specialized and small body of law whereby governments regulate a highly specialized and small body of commerce. It is not a position that requires high legal or financial education or one which requires interpretation or manipulation of law in a theoretical or creative fashion. The beneficiary is not a professional; the position he occupies is not a professional one; the petitioner's argument to the contrary is erroneous and is rejected.

The petitioner provides a tacit admission of the nonprofessional nature of the beneficiary's position as follows:

From a common sense point of view, an individual with a baccalaureate degree in commerce or a related field, who is also fluent in Portuguese does not seem likely to be interested in serving a large community of new and recent immigrants unfamiliar with many aspects of life in the United States, frequently in blue collar jobs. It is also unlikely that such an individual would be equipped through their education to cope with the types of problems that arise in the area of immigrant remittances in the absence of extensive training and experience.

196

What the petitioner says is that it cannot attract a professionally trained individual to the position at issue and so the beneficiary's less than professional attributes but extensive training and experience should be regarded as professional in the interest of service to the Portuguese immigrant community. Statute is manipulable to a degree, but is somewhat more absolute in effect than would permit accommodation of this line of argument. The beneficiary and the position at issue are not professional. There is no good cause for creation of a legal fiction whereby they are.

The petitioner has consistently stated its need and the need of the Portuguese community for the beneficiary's services. This need, if demonstrated, can be satisfied through section 101(a)(15)(H)(ii) of the Act and the procedures designed to implement that statute. We will reaffirm our previous decision that the beneficiary is not classifiable as an alien of distinguished merit and ability and that the position offered him does not constitute exceptional services requiring such a level of merit and ability.

ORDER: The petition is denied.